

AIB

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR FUENTES, individually and on behalf of all others similarly situated, | Civil Action No.:   18-5174<br><br>Complaint -- Class Action |
| Plaintiff, | |
| | Jury Trial Demanded |
| v. | |
| ROYAL DUTCH SHELL PLC, SHELL OIL COMPANY, PENNZOIL-QUAKER STATE COMPANY and JIFFY LUBE INTERNATIONAL, INC., | |
| Defendants. | |

### INTRODUCTION

1.      Average hourly pay at Jiffy Lube shops in the United States ranges from approximately $8.14 per hour for an Entry Level Technician to $16.88 per hour for an Inspector.[1] In contrast, the United States' "living wage"—the "approximate income needed to meet a family's basic needs"—is $15.12.[2]

2.      Likely contributing to this wage gap, according to a study by two Princeton economists, are no-poach provisions in franchise agreements which

---

[1] https://www.indeed.com/cmp/Jiffy-Lube/salaries

[2] Massachusetts Institute of Technology (MIT), http://bit.ly/2OPOQvY.

prohibit one shop owner from offering work to employees of another shop owner.[3] Jiffy Lube—which has more than 2,000 shops across the country—imposed such a no-poach clause in both of its standard franchise agreements.[4]

Owners of a Jiffy Lube franchise, for example, cannot hire anyone who works or has worked at another Jiffy Lube within the previous six months. One of the Princeton study's authors explains that these no-poach provisions can "significantly influence pay" by obviating the need for franchise owners to compete for the best workers.[5]

3.      Another study, co-authored by Eric Posner, a professor at the University of Chicago Law School, found that "[w]hen a franchisor requires the different franchisees within its chain not to poach each other's workers ... the no-poaching agreement is anticompetitive, and will tend to suppress the wages of workers."[6]

4.      Many states, such as California and Oklahoma, prohibit non-compete clauses in employment agreements. But by facilitating agreements between *franchise owners* not to compete for each other's workers, major brands like Jiffy Lube have been able to effectively utilize and enforce these prohibited clauses.

---

[3] https://nyti.ms/2IkOon9.

[4] Jiffy Lube has two distinct franchise agreements; one that includes a "Products Program" requiring use of Pennzoil products, and one that does not. [5] *Id*.

[6] http://bit.ly/2DBGJSE.

5.      Federal courts recognize that these no-poach clauses in franchise agreements are anticompetitive agreements between and among franchisors and franchisees to reduce worker wages. For instance, in June 2018 a federal court upheld a federal antitrust claim against McDonald's for its no-poach clause, opining that "[e]ven a person with a rudimentary understanding of economics would understand" that if McDonald's franchises do not compete with each other for workers, wages "would stagnate."[7] Another federal court ruled similarly in an antitrust action pertaining to Jimmy John's no-poach agreements.[8]

6.      Many states' attorneys general are investigating franchise businesses for their no-poach practices, and, as of October 15, 2018, at least 30 national chains have already entered consent decrees with the Washington Attorney General, pledging to remove no-poach provisions from their franchise agreements.[9]

7.      While eliminating these anticompetitive clauses will help workers going forward, current and former employees of Jiffy Lube shops—including Plaintiff Victor Fuentes—are owed antitrust damages for years of wage suppression. This action seeks to recover these damages and obtain additional injunctive relief on behalf of Mr. Fuentes and similarly situated Jiffy Lube

---

[7] *Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2018 WL 3105955, at *5 (N.D.Ill. June 25, 2018) (citation omitted).
[8] *Butler v. Jimmy John's Franchise, LLC*, No. 18-cv-0133-MJR-RJD, 2018 WL 3631577 (S.D.Ill. July 31, 2018).
[9] https://bit.ly/2SegSmW.

workers.

8.      Jiffy Lube's no-poach provision violates Section 1 of the Sherman Act, 15 U.S.C. §1. By conspiring with and facilitating franchisees to enter into agreements not to compete with one another and with Jiffy Lube itself, Jiffy Lube harmed Plaintiff and the class by suppressing their wages.

## JURISDICTION AND VENUE

9.      This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26, to recover treble damages and the costs of this suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff as a result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. §1 and to enjoin further violations.

10.     Under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26 and Section 4 of the Sherman Act, 15 U.S.C. §4, as well as 28 U.S.C. §§1331, 1332(d), and 1337, the Court has subject matter jurisdiction to prevent and restrain the Defendants from violating Section 1 of the Sherman Act, 15 U.S.C. §1.

11.     Venue is proper in this judicial district under Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. §§15, 22, and 26, and under 28 U.S.C. §1391(b)(2) and (c)(2). Jiffy Lube transacts or has transacted business in this district, and many of the events that gave rise to this action occurred in this district.

12.     Jiffy Lube is in the business of selling convenient lubrication, oil

-4-

change, and light repair services for cars and light trucks to customers through independently owned and operated franchise shops. These shops may be found in 47 of the 50 states in the U.S. Jiffy Lube has substantial business activities with each franchised shop, including entering into a contractual franchise agreement with the owner of the franchise. Jiffy Lube engages in substantial activities at issue in this Complaint that flow through and substantially affect interstate commerce.

## PLANTIFF

13.     Plaintiff Victor Fuentes is a resident of Greenacres, Florida. He was employed by Mid-Atlantic Lubes, Inc., a franchisee that owns and operates approximately 20 Jiffy Lube shops in Pennsylvania and New Jersey. Fuentes was employed for about three months at the shop located in Montgomeryville, Pennsylvania, starting as an Entry Level Technician and eventually rising to the position of Customer Service Advisor. About a year later, Fuentes obtained employment with Atlantic Coast Enterprises, LLC, a franchisee that owns and operates approximately 50 Jiffy Lube shops in Florida and South Carolina. Fuentes was employed for about a year and a half at Jiffy Lube shops owned by this franchisee in Fort Lauderdale and Boca Raton, Florida.

## DEFENDANTS

14.     Defendant Royal Dutch Shell plc ("Shell") is a British-Dutch oil and gas company headquartered in the Netherlands and incorporated in the United Kingdom. Shell owns the Jiffy Lube brand through its subsidiaries Shell

Oil Company ("SOC"), Pennzoil-Quaker State Company ("Pennzoil"), and Jiffy Lube International, Inc. ("JLI", collectively, "Defendants" or "Jiffy Lube").

15.    SOC, a wholly-owned subsidiary of Shell, is a Delaware corporation headquartered in Houston, Texas.

16.    Pennzoil, a wholly-owned subsidiary of Shell, is a Delaware corporation headquartered in Houston, Texas.

17.    JLI, a wholly-owned subsidiary of Shell, is a Delaware corporation headquartered in Houston, Texas.

18.    Jiffy Lube is in the business of selling convenient lubrication, oil change, and light repair services for cars and light trucks to customers through independently owned and operated franchise shops.

## AGENTS AND CO-CONSPIRATORS

19.    The acts alleged against Defendants in this action were authorized, ordered, or conducted by Defendants' officers, agents, employees, or representatives actively engaged in the management and operation of Defendants' businesses and affairs.

20.    Various other corporations and persons that are not named defendants in this action, including Jiffy Lube franchisees, participated as co-conspirators in the violations alleged and performed acts and made statements in furtherance of the violations alleged.

21.    Each Defendant acted as the principal, agent, or joint venture of, or for, other Defendants with respect to the acts, violations, and common course of

conduct alleged by Plaintiff.

## FACTUAL ALLEGATIONS

### *The Franchise Model*

22.     Jiffy Lube operates under a franchise model which involves the owner of a business (the franchisor) licensing, in return for a fee, to third parties (the franchisees) the right to operate a business or distribute goods and/or services using the franchisor's business name and systems (which varies depending on the franchisor) for an agreed period of time.

23.     The franchise fee may be an upfront payment by the franchisee to the franchisor, an ongoing fee (*e.g.*, an agreed percentage of revenue or profit) or a combination of the two. Franchising is an alternative to the franchisor building, owning and operating all of the stores or shops in the chain.

### *The Jiffy Lube System*

24.     Founded in 1979, there are now more than 2,000 Jiffy Lube shops across the United States and Canada, with the vast majority located in the U.S. Jiffy Lube operates its business on a franchise model. Every Jiffy Lube shop is owned by an independent franchisee – Jiffy Lube itself does not operate any shops.  It is the largest "quick lube" chain in the United States. The primary service provided by Jiffy Lube shops is the "Jiffy Lube Signature Service® Oil Change," but shops also provide a wide variety of other light automotive repair services.

25.     In the "Careers" section of its website, Jiffy Lube tells prospective

employees that employment with Jiffy Lube is "[m]ore than just a job, but a step toward a career that lets you instantly see the results of your hard work . . ." and that "Jiffy Lube provides employees with a safe and enriching work environment . . ."[10] Jiffy Lube further assures applicants that they'll "be working with one of the most reputable companies in the business, one with a stake in your success because it enhances our customers' trust in Jiffy Lube." *Id.*

### *The No-Poach Clause*

26.     To own a Jiffy Lube franchise, an aspiring franchisee must sign a standard franchise agreement with Jiffy Lube, with a typical term of 20 years. In addition, a franchisee must pay a franchise fee of approximately $35,000, training and other fees, and a percentage of monthly gross sales as a royalty to Jiffy Lube. Franchisees and managers of Jiffy Lube shops are required to attend training programs at Jiffy Lube training centers, with at least some of the cost borne by the franchisees. The total investment necessary to begin operating a Jiffy Lube franchise shop is between approximately $234,000 and $372,650, exclusive of real estate and construction costs.

27.     Beginning at an unknown date and continuing through at least March 30, 2016, Jiffy Lube incorporated a clause into its standard franchise agreements prohibiting Jiffy Lube franchisees from soliciting or hiring existing employees of Jiffy Lube shops (the "No-Poach Clause"). Specifically, Jiffy Lube

---

[10] https://www.jiffylube.com/careers

and franchisees agreed to the following:

> Franchisee covenants that during the term of this Agreement, Franchisee will not employ or seek to employ any person who is or within the preceding six months has been an employee of Franchisor or of any System franchisee of Franchisor, either directly or indirectly, for itself or through, on behalf of, or in conjunction with any person.

28.     Jiffy Lube franchisees also agreed that Jiffy Lube had the unilateral power to terminate their franchises upon a franchisee's default, which includes franchisees' failing to comply with the No-Poach Clause. Jiffy Lube franchisees, therefore, ignore the No-Poach Clause at their peril and to their financial detriment.

### Jiffy Lube Shops are Independent Businesses that Compete With Each Other

29.     As established by Jiffy Lube's standard franchise agreements, each Jiffy Lube franchise is operated as an independently owned and managed business, by an entity that is separate from Jiffy Lube. Specifically, the standard agreements state that each Jiffy Lube franchisee is:

> an independent contractor with the right to complete control and direction of the Franchised Center, subject only to the conditions and covenants established within this Agreement, the Manual and the System Manuals. No agency, employment or partnership is created or implied by the terms of this Agreement. Franchisee's business is totally separate from Franchisor.

Jiffy Lube licenses to franchisees the right to use the Jiffy Lube brand and system in the operation of these independently owned franchise shops.

30.     Jiffy Lube shops are all independently owned and operated franchises, which compete among each other. In executing a Jiffy Lube franchise agreement, a franchisee specifically acknowledges and represents that it is an

independent business person or entity.

### *The No-Poach Clause Benefits Jiffy Lube Shop Owners at the Expense of Employees and Consumers*

31.    Although each Jiffy Lube shop is an independently owned and operated business that competes with other Jiffy Lube shops—and although each franchisee contractually is solely responsible for all aspects of the employment relationship with its employees, with the sole right to hire, discipline, promote, demote, transfer, discharge, and establish wages, hours, benefits, and employment policies, among other things—Jiffy Lube and its franchisees have agreed not to compete among each other for workers. This agreement is expressly stated in Jiffy Lube franchise agreements.

32.    Jiffy Lube enforced a no-poaching conspiracy among itself and franchisees for years in order to suppress wages.

33.    The Jiffy Lube franchise agreement contains an integration clause. Franchisees specifically contract that, with limited exceptions, franchises are governed by the terms of the franchise agreement a franchisee executes and not by terms later agreed to by other franchisees. Jiffy Lube informs prospective franchisees that the terms of the contract will govern the franchise.

34.    The Jiffy Lube Franchise Disclosure Document includes a list of all Jiffy Lube franchisees, organized by state, city, and street address. Franchisees thus know that these entities are the other franchisees as to whom the No-Poach Clause memorialized in the franchise agreement applies.

35.    The No-Poach Clause would not be in the independent interest of

Jiffy Lube shop owners if they were acting unilaterally. The profitability of each shop is critically dependent upon the quality of the workers they employ. It is therefore in the independent interest of Jiffy Lube and each Jiffy Lube franchisee to compete for the most conscientious, talented and experienced employees.

36.     The No-Poach Clause artificially restricts the ability of Jiffy Lube and its franchisees to hire employees in a manner consistent with their individual economic interests. But by acting in concert, they also protect themselves from having their own employees poached by other Jiffy Lube shops that may place value on those employees for their training, experience or work ethic. This allows Jiffy Lube shop owners to retain their best employees without having to pay market wages or provide them with attractive working conditions and opportunities for promotion.

37.     The No-Poach Clause does not benefit consumers because it does not help to incentivize Jiffy Lube or its franchisees to invest in training workers to improve the services they provide at Jiffy Lube shops.

38.     Consumers can gain from competition among employers because a more competitive workforce may create more or better goods and services. Further, although unemployment is at record lows, wage growth remains sluggish. Low-paid workers regularly rely on public assistance to supplement their income. Higher wages would lessen the strain on public assistance, benefiting all consumers.

39.     Critically, the No-Poach Clause does not benefit Jiffy Lube shop

employees because it does not spur Jiffy Lube and its franchisees to invest in higher wages, benefits, and improved working conditions to compete for their labor. Because employees are not rewarded appropriately for their efforts, they are not motivated to excel at their jobs. Competition among employers helps actual and potential employees through higher wages, better benefits, or other terms of employment.

40.     Jiffy Lube and its franchisees have a shared anticompetitive motive to keep labor costs low. As noted above, franchisees pay Jiffy Lube royalties based on a percentage of gross sales. Cost of labor therefore has a direct impact on franchisees' profitability. By agreeing not to compete for labor, they act against their unilateral self-interest, but serve and benefit from their shared interest.

41.     But for the No-Poach Clause, each Jiffy Lube franchise is its own economic decision-maker with respect to hiring, firing, staffing, promotions and employee wages. But for the No-Poach Clause, each Jiffy Lube shop would compete with each other for the best-performing and most qualified employees.

### *Jiffy Lube Systematically Suppresses Employee Wages and Mobility Through the No-Poach Clause*

42.     Low wages are consistent across Jiffy Lube shops. This has allowed Jiffy Lube owners and executives, and Jiffy Lube franchisees, to enrich themselves financially while full-time, hardworking employees often must resort to government benefits just to survive. A material reason for this is that Jiffy Lube has orchestrated an agreement among franchisees to stifle employee wages

and mobility.

43. If Jiffy Lube shop owners had to either pay and promote good employees, or lose them to competitor locations, they would be forced to pay competitive wages and provide competitive promotion opportunities. However, because of the No-Poach Clause—and because their workers' levels of education, training and experience within Jiffy Lube shops are unique and not easily transferrable to other shops—franchisees do not compete with each other, and they do not have to compete with non-Jiffy Lube businesses for their employees, excepting entry-level positions.

44. Jiffy Lube and its franchisees are well-versed in no-poaching efforts as they regularly employ highly restrictive "unfair competition" agreements binding the franchise owners. Pursuant to the franchise agreements, both during and after the franchise term, Jiffy Lube franchisees are contractually prohibited from engaging indirectly or directly in any other business "substantially similar" to a Jiffy Lube shop.

45. Jiffy Lube's form employment applications include a specific inquiry into whether the candidate has previously been employed at a Jiffy Lube shop. The application requests information about the dates, location, and supervisor relating to any such employment. The potential employer can use this information to quickly determine whether the No-Poach Clause is implicated for an applicant.

*Jiffy Lube Employees Cannot Easily Leverage Their Skills to Gain Employment Elsewhere*

46.     Training, education, and experience at Jiffy Lube shops are not easily transferrable to other shops for a number of reasons.

47.     Jiffy Lube reserves for itself the right to specify or require certain brands or models of communications equipment, computer systems, hardware for back-office and point-of-sale systems, printers and peripherals, backup systems, and the like.

48.     Franchisees pay system-support fees for these proprietary systems and acknowledge that these systems provide access to confidential and proprietary information. Experience with these systems affords little value to other brand shops.

49.     Franchisees use approved or mandatory suppliers and vendors affiliated with Jiffy Lube. Experience with these vendors is of little value to other shops.

50.     Franchisees also utilize proprietary operating procedures, described in Jiffy Lube proprietary operating materials.

51.     A no-poach agreement like the agreement among Jiffy Lube and its franchisees reduces employees' outside options and renders them less likely to quit, thereby increasing the share of net-returns captured by Jiffy Lube employers. Further, a no-poach agreement among all Jiffy Lube shop owners increases the specificity and one-off nature of human capital investment, as training that is productive throughout the chain can be used only by a single

-14-

franchisee pursuant to the agreement.

### *A Competitive Labor Market Would Include Solicitation and Hiring of Jiffy Lube Shop Employees by Other Jiffy Lube Shop Owners*

52.     All Jiffy Lube shops compete with each other. In a free, properly functioning and lawfully competitive labor market, Jiffy Lube franchisees would openly compete for labor by soliciting current employees of one or more other Jiffy Lube shops (*i.e.*, attempting to "poach" other shops' employees).

53.     For all these reasons, the fundamental principle of free competition applies to the labor market as well as to trade. "In terms of suppressing competition, companies agreeing not to compete for each other's employees is the same as companies agreeing not to compete for each other's customers."[11]

54.     According to Peter Cappelli, Wharton management professor and director of Wharton's Center for Human Resources, a no-poaching agreement is unfair to employees and such a pact "benefits the companies at the expense of their employees." Mr. Cappelli notes that the reason such agreements are illegal and violate both antitrust and employment laws is because "[c]ompanies could achieve the same results by making it attractive enough for employees not to leave."[12]

---

[11] Joseph Harrington, Wharton professor of business economics and public policy, https://whr.tn/ScKBx2.
[12] *Id.*

-15-

55.     The collusion of employers to refrain from hiring each other's employees restricts employee mobility. This raises employers' power in the market at the expense of employees and diminishes employees' bargaining power. This is especially harmful to employees of Jiffy Lube shops as those employees are frequently paid below a living wage, and the marketable skills they acquire through their work at such shops primarily have value only to other such shops and do not easily transfer to other automotive service shops or businesses. No-poach agreements have anti-competitive impact in labor markets analogous to that of mergers in product markets.

56.     Although unemployment in the United States is currently very low, wage growth stagnates. A decade removed from the Great Recession, wage growth has remained stuck below 3 percent.[13] A growing number of commentators identify proliferating no-poaching agreements—including those used within franchise systems—and dubious employee non-compete agreements as significant contributors to the atrophy in wage growth.[14]

### Government Action in Response to Illegal No-Poach Agreements

57.     The United States Department of Justice (DOJ) has pursued and resolved civil antitrust investigations relating to no-poach agreements made between or among employers. For instance, in 2010, DOJ settlements with six high-tech employers prohibited those companies from engaging in

---

[13] *See* https://bit.ly/2FEpagY.

[14] *See, e.g.,* https://nyti.ms/2IkOon9; https://nyti.ms/2t04myZ.

anticompetitive no-solicitation agreements relating to their employees on a going-forward basis.

58.     The 2016 DOJ/FTC *Antitrust Guidance for Human Resource* Professionals states: "Naked wage-fixing or no-poaching agreements among employers, whether entered into directly or through a third party intermediary, are per se illegal under the antitrust laws."

59.     In July 2018, attorneys general (AGs) of 11 states announced an investigation into no-poaching hiring practices at a number of franchise chains. According to a release from Illinois Attorney General ("AG") Lisa Madigan, the state is investigating no-poach agreements because those agreements "unfairly stop[] low-income workers from advancing and depress[] their wages." The state AGs demanded documents and information from franchisors about their no-poach practices.

60.     On or about August 12, 2018, State of Washington Attorney General Bob Ferguson announced that in order to avoid lawsuits, certain franchisors had reached agreements to discontinue enforcement of no-poach provisions and to take steps to remove no-poach language from franchise agreements going forward.

## REPRESENTATIVE PLAINTIFF ALLEGATIONS AND ANTITRUST INJURY

61.     Plaintiff Victor Fuentes began working at the Jiffy Lube shop in Montgomeryville, Pennsylvania in or around October of 2015. At all relevant times, Fuentes was an at-will employee.

62.     Fuentes was initially hired as an Entry Level Technician, with an hourly wage of $8.00. His excellent work quickly earned him promotions to various roles, including Upper Bay Technician and Customer Service Advisor. Pay raises associated with these promotions were promised, but never received.

63.     In or around December 2015, Fuentes decided that he would move to South Florida in 2016 to be closer to family. He requested to be transferred to a Jiffy Lube shop in South Florida, but was told that this was not possible, because that would involve employment with a different franchisee than the one for which he currently worked.

64.     Unable to obtain employment at a South Florida Jiffy Lube shop, Fuentes gave notice at the Montgomeryville shop where he was working, and left around January, 2016. He moved to South Florida in or around May of 2016.

65.     Fuentes held various jobs in South Florida during the remainder of 2016, but wasn't able to find anything satisfactory. Finally, after the waiting period required by the No-Poach Clause expired, Fuentes was able to obtain employment as an Entry Level Technician at a Jiffy Lube shop in Fort Lauderdale, Florida, with an hourly wage of $10.00.

66.     Just as in Montgomeryville, Fuentes's excellent work quickly earned him promotions to various roles, including Customer Service Advisor and eventually Shift Manager. He received a raise to $11.00 per hour and performance-related bonuses. Over the course of his employment, he worked at the Fort Lauderdale shop, as well as two shops in Boca Raton that were owned

by the same franchisee.

67.     In December of 2017, Fuentes decided to move back to Pennsylvania, and sought a transfer to a Jiffy Lube shop there. Again, he was denied due to the No-Poach Agreement. In July of 2018, Fuentes left his employment with Jiffy Lube.

68.     The no-poach agreement among Jiffy Lube and its franchisees suppressed Plaintiff's wages, inhibited his employment mobility, and lessened his professional work opportunities.

### *Antitrust Injury*

69.     Plaintiff suffered reduced wages, reduced employment benefits, loss of professional growth opportunities, and worsened working conditions because of the express agreement to restrain trade among Jiffy Lube and its franchisees, as orchestrated, facilitated and enforced by Jiffy Lube itself.

70.     Suppressed wages and employment benefits resulting from employers' agreement not to compete with each other in the labor market is injury of the type the antitrust laws were intended to prevent and flows directly from illegal nature of the No-Poach Clause.

71.     The potential for broader collusion in franchise chains is enhanced when no-poach agreements are in place. Collusion is promoted when the no-poach agreements can be easily generated and monitored among a concentrated group of competitors who all stand to gain profits from the collusion while maintaining similar costs.

72.     The Jiffy Lube No-Poach Clause significantly restricts employment opportunities for low-wage workers at all Jiffy Lube shops, including those who have not sought employment with a competitor shop and those who have not been contacted by a competitor shop. Such a restriction causes a wider effect upon all Jiffy Lube shop employees.

73.     Plaintiff was a victim of the No-Poach Clause. By adhering to that agreement, otherwise independently owned and operated competitor businesses suppressed wages and stifled labor market competition for improved employment opportunities.

## CLASS ALLEGATIONS

74.     Plaintiff brings this action on behalf of himself, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), and/or 23(b)(3) described as follows: "All persons in the United States who are current or former employees of a Jiffy Lube shop operated by Jiffy Lube or a franchisee from at least 2010 forward (the 'Class')."

75.     Excluded from the Class are Defendants, their affiliates, officers and directors, and the Court. Plaintiff reserves the right to modify, change, or expand the Class definition on discovery and further investigation.

76.     Numerosity: While the exact number of members of the Class is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, membership in the Class is ascertainable based upon the records maintained by Defendants. At this time, Plaintiff is informed and believes that

the Class includes thousands of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through a class action will benefit the parties and the Court.

77.     Existence and Predominance of Common Questions of Fact and Law: Common questions of fact and law exist as to all members of the Class (Class Members). These questions predominate over questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, whether:

a.     Defendants engaged in unlawful contracts, combinations, and/or conspiracies in restraint of trade and commerce;

b.     Defendants violated the Sherman Antitrust Act, 15 U.S.C. §§1, *et seq.*;

c.     Defendants should be required to disclose the existence of such agreements, contracts, combinations, and/or conspiracies;

d.     Plaintiff and Class Members are entitled to damages, restitution, disgorgement, equitable relief, and/or other relief; and

e.     The amount and nature of such relief to be awarded to Plaintiff and the Class.

78.     Typicality: Plaintiff's claims are typical of the claims of the other members of the Class which he seeks to represent under Federal Rule of Civil

Procedure 23(a)(3) because Plaintiff and each member of the Class have been subjected to the same unlawful, deceptive, and improper practices and has been damaged in the same manner thereby.

79.     Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff has no interests adverse to those of the Class Members. Further, Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

80.     Superiority: A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

   a. The expense and burden of individual litigation make it economically unfeasible for members of the Class to seek to redress their claims other than through the procedure of a class action;

   b. If separate actions were brought by individual members of the Class, the resulting duplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

   c. Absent a class action, Defendants likely would retain the benefits of their wrongdoing, and there would be a failure of justice.

81.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with

respect to the Class as a whole.

## FRAUDULENT CONCEALMENT

82. Plaintiff and Class Members had neither actual nor constructive knowledge of the unlawful no-poach and no-hiring conspiracy orchestrated by Defendants, nor would any reasonable amount of diligence by Plaintiff or the Class have put them on notice the conspiracy. Any statute of limitations is therefore tolled by Defendants' intentional concealment of their No-Poach Clause. Plaintiff and Class members were deceived regarding Defendants' collusion to suppress wages and employment mobility and could not reasonably discover the Defendants' anticompetitive conduct.

83. Neither Defendants nor franchisees disclosed the existence of the no-poach conspiracy to Plaintiff or Class Members.

84. Public statements by Jiffy Lube conceal the fact that it orchestrated and engaged in a no-poach conspiracy with its franchisees.

85. Plaintiff and the Class would thus have no reason to know of the No-Poach Clause evidenced by franchisees' contractual undertakings with Defendants. Plaintiff and the Class are not parties to franchisees' contractual franchise agreements with Defendants. Nor are these contracts routinely provided to Plaintiff and Class Members.

86. Although Defendants provided their form franchise documents to state regulators, franchise disclosure documents and form franchise agreements are made available by Defendants only upon request by prospective franchisees.

-23-

Obtaining Defendants' historic franchise disclosure documents and form franchise agreements is even more difficult.

87.     In order to obtain Defendants' current franchise disclosure documents and form franchise agreement from Jiffy Lube, a prospective franchisee must submit an application (with supporting documents) seeking to open a franchise. Only after Jiffy Lube reviews the application to ensure that the franchisee meets initial qualifications does Jiffy Lube provide the franchise disclosure document. Prospective franchisees are told that in order to qualify for consideration, they should have a minimum of $150,000 in liquid assets, a net worth of $450,000 or greater, and the ability to obtain financing to cover the cost of opening a location.

88.     Defendants' franchise disclosure documents and form franchise agreements are not routinely provided to employees (or prospective employees) of franchisees, whether by Defendants, by franchisee employers, by regulators, or by anyone else. Historic franchise disclosure documents and form franchise agreements would never be available to franchisee employees or prospective employees.

89.     Because of Defendants' successful deceptions and other concealment efforts described herein, Plaintiff and Class Members had no reason to know Defendants had conspired to suppress compensation or employee mobility.

90.     As a result of Defendants' fraudulent concealment of the

conspiracy, the running of any statute of limitations has been tolled with respect to the claims that Plaintiff and the Class Members have as a result of the anticompetitive and unlawful conduct alleged herein.

## **CLAIM FOR RELIEF**

### **COUNT I: VIOLATIONS OF SECTION 1 OF THE SHERMAN ANTITRUST ACT**

91.       Plaintiff, on behalf of himself and all others similarly situated, re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 90 of this Complaint, and further alleges against Defendants as follows:

92.       Defendants orchestrated, entered into, and engaged in unlawful contracts, combinations in the form of trust or otherwise, and/or conspiracies in restraint of trade and commerce in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1, *et seq.*

93.       Defendants engaged in predatory and anti-competitive behavior by orchestrating an agreement to restrict competition among Jiffy Lube shop owners, which unfairly suppressed employee wages, and unreasonably restrained trade.

94.       Defendants' conduct included concerted efforts, actions and undertakings between and among the Defendants and franchise owners with the intent, purpose, and effect of: (a) artificially suppressing the compensation of Plaintiff and Class Members; (b) eliminating competition among Jiffy Lube shop owners for skilled labor; and (c) restraining employees' ability to secure better compensation, advancement, benefits, and working conditions.

95.     Defendants perpetrated the scheme with the specific intent of lowering costs to the benefit of Defendants and franchise owners.

96.     Defendants' conduct in furtherance of the no-poach agreement was authorized, ordered, or executed by their officers, directors, agents, employees, or representatives while actively engaging in the management of Defendants' affairs.

97.     Plaintiff and Class Members have received lower compensation from Jiffy Lube shops than they otherwise would have received in the absence of Defendants' unlawful conduct and, as a result, have been injured in their property and have suffered damages in an amount according to proof at trial.

98.     Defendants' contracts, combinations, and/or conspiracies are *per se* violations of Section 1 of the Sherman Antitrust Act.

99.     In the alternative, Defendants are liable under a "quick look" analysis where an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on employees and labor.

100.    Defendants' contracts, combinations, and/or conspiracies have had a substantial effect on interstate commerce.

101.    As a direct and proximate result of Defendants' contracts, combination, and/or conspiracy to restrain trade and commerce, Plaintiff and Class Members have suffered injury to their business or property and will continue to suffer economic injury and deprivation of the benefit of free and fair

competition.

102.    Plaintiff and the Class Members are entitled to treble damages, attorneys' fees, reasonable expenses, costs of suit, and, pursuant to 15 U.S.C. §26, injunctive relief, for the violations of the Sherman Antitrust Act and the threatened continuing violations alleged herein.

**PRAYER FOR RELIEF**

103.    Wherefore, Plaintiff, on behalf of himself and Members of the Class, requests that this Court:

A. Determine that the claims alleged herein may be maintained as a Class Action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. Appoint Plaintiff as the representative of the Class and his counsel as Class Counsel;

C. Declare that Defendants' actions as set forth in this Complaint violate the law;

D. Award Plaintiff and the Class damages in an amount according to proof against Defendants for Defendants' violations of 15 U.S.C. §1, to be trebled in accordance with those laws;

E. Award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiff and the Class Members are entitled;

F. Permanently enjoin Defendants from enforcing or adhering to any

-27-

existing agreement that unreasonably restricts competition as described herein;

G. Permanently enjoining and restraining Defendants from establishing any similar agreement unreasonably restricting competition for employees except as prescribed by this Court;

H. Order Defendants to notify all Class Members that they have the unrestricted right to seek employment at any Jiffy Lube shop;

I. Declare Defendants to be financially responsible for the costs and expenses of a Court-approved notice program by mail, broadcast media, and publication designed to give immediate notification to Class Members;

J. Award pre-judgment and post-judgment interest on such monetary relief;

K. Award reasonable attorneys' fees, costs and litigation expense; and

L. Grant such further relief that this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

Dated: November 29, 2018

Respectfully submitted,

/s/ John A. Yanchunis
John A. Yanchunis
jyanchunis@forthepeople.com
Florida Bar No. 324681
Marcio W. Valladares
mvalladares@forthepeople.com
Florida Bar No. 0986917
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
201 North Franklin Street,
Seventh Floor
Tampa, Florida 33602
Telephone: (813) 223-5505

/s/ Kevin Clancy Boylan
Kevin Clancy Boylan
cboylan@forthepeople.com
Pennsylvania Bar No. 314117
**MORGAN & MORGAN**
1600 John F. Kennedy Blvd,
Suite 900
Philadelphia, PA 19102
Telephone: (215) 446-9795

/s/ Michael L. Schrag
Michael L. Schrag
(*pro hac vice* to be submitted)
mls@classlawgroup.com
Eric H. Gibbs
(*pro hac vice* to be submitted)
ehg@classlawgroup.com
Joshua J. Bloomfield
(*pro hac vice* to be submitted)
jjb@classlawgroup.com
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

/s/ George W. Sampson
George W. Sampson
(*pro hac vice* to be submitted)

-29-

george@sampsondunlap.com
**SAMPSON DUNLAP LLP**
1001 4th Ave., Suite 3200
Seattle, WA 98154
Telephone: (206) 369-3962

*Attorneys for Plaintiff Victor Fuentes
and the Proposed Class*

ATTORNEY ATTACHMENT

*/s/ John A. Yanchunis*
John A. Yanchunis
jyanchunis@forthepeople.com
Florida Bar No. 324681
Marcio W. Valladares
mvalladares@forthepeople.com
Florida Bar No. 0986917
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
201 North Franklin Street,
Seventh Floor
Tampa, Florida 33602
Telephone: (813) 223-5505

*/s/ Kevin Clancy Boylan*
Kevin Clancy Boylan
cboylan@forthepeople.com
Pennsylvania Bar No. 314117
**MORGAN & MORGAN**
1600 John F. Kennedy Blvd,
Suite 900
Philadelphia, PA 19102
Telephone: (215) 446-9795

*/s/ Michael L. Schrag*
Michael L. Schrag
(*pro hac vice* to be submitted)
mls@classlawgroup.com
Eric H. Gibbs
(*pro hac vice* to be submitted)
ehg@classlawgroup.com
Joshua J. Bloomfield
(*pro hac vice* to be submitted)
jjb@classlawgroup.com
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

*/s/ George W. Sampson*
George W. Sampson

(*pro hac vice* to be submitted)
george@sampsondunlap.com
**SAMPSON DUNLAP LLP**
1001 4th Ave., Suite 3200
Seattle, WA 98154
Telephone: (206) 369-3962