## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR FUENTES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 18-5174 |
| | : | |
| ROYAL DUTCH SHELL, PLC., et. al, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT JIFFY LUBE INTERNATIONAL, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## <u>MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)</u>

Layne E. Kruse*
Anne M. Rodgers*
Eliot F. Turner*
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Telephone:     (713) 651-5151
Telecopier:    (713) 651-5246

* Applications for admission
*pro hac vice* forthcoming

Andrea L. D'Ambra (PA 93385)
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019-6022
Telephone:     (212) 318-3000
Telecopier:    (212) 408-5100
andrea.dambra@nortonrosefulbright.com

*Attorneys for Defendant Jiffy Lube International, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

SUMMARY OF ALLEGATIONS ......................................................................................... 2

ARGUMENT AND AUTHORITIES ....................................................................................... 4

1.   Fuentes's claim is evaluated under the "rule of reason," but he has not alleged the
     necessary elements to plead a rule-of-reason claim .............................................. 5

     A.   The rule of reason applies to Fuentes' claim, which challenges a restraint
          involving firms at two different levels of the market ............................................. 5

     B.   A quick look approach is not appropriate .......................................................... 10

     C.   Fuentes has failed to allege relevant product and geographic markets,
          which are necessary for a rule-of-reason claim .................................................. 14

2.   Fuentes does not have standing under Article III to pursue injunctive relief
     because he is no longer subject to the agreement that he challenges and Jiffy
     Lube has agreed not to enforce this provision in its franchise agreements ............................. 16

     A.   Fuentes is not subject to the provision because he does not work at Jiffy
          Lube and has not for over six months and has not alleged that he will
          return to work at Jiffy Lube ...................................................................... 16

     B.   Jiffy Lube has agreed to remove the "no hire" clause from new franchise
          agreements and not to enforce the clause in any existing franchise
          agreements ...................................................................................... 18

3.   Fuentes's fraudulent concealment allegations do not allege conduct sufficient to
     establish fraudulent concealment as a matter of law and fail to meet the
     particularity requirements of Rule 9(b) ........................................................... 18

     A.   Fuentes's allegations of "concealment" fail as a matter of law .......................... 19

     B.   Jiffy Lube's franchise agreement is publicly available and has been for
          years—making any claim that the agreement was concealed from Fuentes
          or anyone else implausible ...................................................................... 20

CONCLUSION ................................................................................................................ 22

CERTIFICATE OF SERVICE .............................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................4, 7

*AT&T Corp. v. JMC Telecom, LLC*,
    470 F.3d 525 (3d Cir. 2006).............................................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).........................................................................................4

*Brunson Commc'ns, Inc. v. Arbitron, Inc.*,
    239 F. Supp. 2d 550 (E.D. Pa. 2002)...........................................................4, 7

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997).....................................................................3, 4, 5

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
    485 U.S. 717 (1988).......................................................................................6, 9

*Butler v. Jimmy John's Franchise, LLC*,
    331 F. Supp. 3d 786 (S.D. Ill. 2018)...........................................................12, 13

*Butler v. Jimmy John's Franchise, LLC*,
    331 F. Supp. 3d 789 (S.D. Ill. 2018)...............................................................13

*Byrnes v. DeBolt Transfer, Inc.*,
    741 F.2d 620 (3d Cir. 1984)............................................................................19

*Cal. Dental Ass'n v. Federal Trade Comm'n*,
    526 U.S. 756 (1999).......................................................................................10

*California v. Safeway, Inc.*,
    651 F.3d 1118 (9th Cir. 2011) .......................................................................14

*Cont'l T.V., Inc. v. GTE Sylvania, Inc.*,
    433 U.S. 36 (1977).......................................................................................6, 14

*Cunningham v. M&T Bank Corp.*,
    814 F.3d 156 (3d Cir. 2016)............................................................................19

*Deslandes v. McDonald's USA, LLC*,
    Case No. 17-cv-4857, 2018 WL 3105955 (N.D. Ill. June 25, 2018)................12, 13

*Deutscher Tennis Bund v. ATP Tour, Inc.*,
    610 F.3d 820 (3d Cir. 2010)................................................................................11, 12

*Eichorn v. AT&T Corp.*,
    248 F.3d 131 (3d Cir. 2001)....................................................................................8

*Eichorn v. AT&T Corp.*,
    248 F.3d 131 (3d Cir. 2001)...........................................................................5, 8, 12

*Fed. Trade Comm'n v. Actavis*,
    570 U.S. 136 (2013)..............................................................................................11

*Forbes v. Eagleson*,
    228 F.3d 471 (3d Cir. 2000).............................................................................19, 20

*In re Franchising No Poaching Provisions*,
    Case No. 18-2-5777-2 SEA (Wash. Sup. Ct. Dec. 20, 2018) ................................18

*Friends of the Earth v. Laidlaw Env't Servs.*,
    528 U.S. 167 (2000)..............................................................................................16

*Gelman v. State Farm Mut. Auto. Ins. Co.*,
    583 F.3d 187 (3d Cir. 2009).....................................................................................4

*Gordon v. Lewiston Hosp.*,
    423 F.3d 184 (3d Cir. 2005)...................................................................................10

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
    602 F.3d 237 (3d Cir. 2010)...................................................................................15

*In re Ins. Brokerage Antitrust Litig.*,
    618 F.3d 300 (3d Cir. 2010).....................................................................................7

*In re K-Dur Antitrust Litig.*,
    686 F.3d 197 (3d Cir. 2012)...................................................................................10

*Landau v. Vidrin Energy PA LLC*,
    223 F. Supp. 3d 401 (E.D. Pa. 2016) ....................................................................17

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007)................................................................................................7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................................16

*Lum v. Bank of America*,
    361 F.3d 217 (3d Cir. 2004)...................................................................................20

*McNair v. Synapse Grp., Inc.*,
    672 F.3d 213 (3d Cir. 2012)........................................................................17

*Ohio v. American Express Co.*,
    138 S. Ct. 2274 (2018)................................................................................5

*Orson, Inc. v. Miramax Film Corp.*,
    79 F.3d 1358 (3d Cir. 1996).........................................................................7

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993)........................................................................4

*Philadelphia Fast Foods, Inc. v. Popeye's Famous Fried Chicken, Inc.*,
    647 F. Supp. 216 (E.D. Pa. 1986) .................................................................6

*Pinney Dock & Transp. Co. v. Penn Cent. Corp.*,
    838 F.2d 1445 (6th Cir. 1988) .....................................................................20

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    124 F.3d 430 (3d Cir. 1997).........................................................................15

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
    922 F. Supp. 1055 (E.D. Pa. 1996) .........................................................14, 15

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
    792 F.2d 210 (D.C. Cir. 1986) (Bork, J.)........................................................9

*Sands v. McCormick*,
    502 F.3d 263 (3d Cir. 2008)......................................................................4, 5

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014).........................................................................5

*Stigar v. Dough Dough, Inc.*,
    No. 2:18-cv-00244-SAB (E.D. Wash. Mar. 8, 2019) ......................................9, 12

*Texaco Inc. v. Dagher*,
    547 U.S. 1 (2006).....................................................................................6

*United States v. Brown Univ.*,
    5 F.3d 658 (3d Cir. 1993).................................................................10, 11, 14

*Upsher Smith Labs. Inc. v. La. Wholesale Drug Co.*,
    570 U.S. 913 (2013)..................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................17

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ...............................................................................................16

*Yi v. SK Bakeries, LLC*,
   No. 18-cv-5627 (W.D. Wa. Nov. 13, 2018), Doc. 33 ...........................................13

**Rules and Statutes**

15 U.S. C. § 15b ...........................................................................................................18

Fed. R. Civ. P. 9(b) .......................................................................................2, 18, 19, 20

Minn. Stat. § 80C.04(h) ................................................................................................21

Minn. Stat. § 80C.22 .....................................................................................................21

**Other Authorities**

16 C.F.R. § 436.1 et seq. ...............................................................................................21

14D Philip Areeda & Herbert Hovekamp, *Antitrust Law* ¶ 1437a ................................6

## INTRODUCTION

Victor Fuentes is a former employee of two Jiffy Lube International, Inc. ("Jiffy Lube") franchisees in three different locations. He has sued Jiffy Lube alleging that it violated Section 1 of the Sherman Antitrust Act by including a provision in its franchise agreements that prevents franchisees from hiring other franchisees' employees during their employment or for six months after their employment ends. 15 U.S.C. § 1; Doc. 1 ¶ 8. Fuentes seeks to represent a class of all current and former Jiffy Lube employees, going back to at least 2010, and he seeks both damages and injunctive relief. Doc. 1 ¶ 74.

Fuentes's complaint fails to state a claim under Section 1 and must be dismissed for a number of independent reasons.

First, although Fuentes contends that his claim should be judged using antitrust's per se rule, which condemns certain types of agreements between competitors as "per se" unlawful, he admittedly challenges an agreement made by firms at different levels of the distribution chain, that is, firms that *do not* compete with one another. The Supreme Court and Third Circuit repeatedly have held that that the per se standard is the exception rather than the rule; vertical restraints, like the one Fuentes challenges, must be evaluated under the rule of reason. And under the rule of reason, before any restraint can be found unreasonable, its competitive effects in a properly defined relevant market must be weighed.

But Fuentes has failed to plead the necessary elements of a rule-of-reason claim. He has not alleged relevant geographic or product markets, both of which are necessary under the rule of reason to evaluate whether the agreements Fuentes challenges have any effect on competition, much less an effect that would violate the Sherman Act. Without those allegations, Fuentes's complaint must be dismissed.

Second, Fuentes's claim for injunctive relief must also be dismissed because he does not have standing to pursue it.  Fuentes has not been employed by a Jiffy Lube franchisee for more than six months, nor has he indicated that he has any plans to return to work for a Jiffy Lube franchisee.  Thus, he is not subject to the terms of the agreement he challenges, nor is he likely to be.  And since Jiffy Lube no longer includes the provision in new franchise agreements and has agreed that it will not enforce the provision in its existing franchise agreements, no one could be.

Third, Fuentes claims that the fraudulent concealment doctrine should excuse his claim from the four-year statute of limitations that applies to antitrust claims.  But Fuentes's allegations do not allege a plausible claim of fraudulent concealment, let alone meet the heightened standard for particularity required for fraud allegations by Federal Rule of Civil Procedure 9(b).  Nor could they considering that the agreement Fuentes challenges is publicly available and has been for many years.

For all these reasons, Fuentes's complaint should be dismissed.

## SUMMARY OF ALLEGATIONS

Fuentes alleges that he was hired in October 2015 by a Jiffy Lube franchise in Montgomeryville, Pennsylvania, as an Entry Level Technician.  Doc. 1 ¶¶ 61-62.  Just two months later, in December, 2015, Fuentes decided he wanted to move to South Florida.  He alleges that he was told that he could not transfer to a Jiffy Lube in Florida because the Montgomeryville franchisee did not have a franchise in Florida.  *Id.* ¶ 63.

Even though Fuentes began looking for work in South Florida almost immediately after starting with the Montgomeryville Jiffy Lube, he received a number of promotions.  *Id.* ¶¶ 63-64.  Despite that, Fuentes quit his job at the Montgomeryville Jiffy Lube sometime in January 2016, and moved to Florida four or five months later, in May 2016.  *Id.* ¶ 64.

At the time Fuentes moved to South Florida, only a month or two would have remained on the six-month no-hire provision contained in the franchise agreements between defendant Jiffy Lube and its independent franchisees (that Fuentes admits are not competitors of Jiffy Lube). *Id.* ¶¶ 27, 29-30.[1]  Nevertheless, Fuentes held various jobs after moving to South Florida that were not "satisfactory" to him before he obtained a job some (unidentified) time later at a Fort Lauderdale Jiffy Lube making $2.00 an hour more than he had at the Jiffy Lube in Montgomeryville. *Id.* ¶ 65.

Fuentes received a raise and performance-based bonuses in Fort Lauderdale and was able to transfer to a Jiffy Lube in Boca Raton that was owned by the same franchisee. *Id.* ¶ 66.  But Fuentes then apparently decided in December 2017 that he did not want to live close to his family in Florida anymore. *Id.* ¶ 67.  He once again sought a transfer, this time back to Pennsylvania. *Id.* ¶ 67.  The transfer was allegedly "denied due to the No-Poach Agreement," and in July 2018, Fuentes quit working at the Florida Jiffy Lube. *Id.*

From these few allegations, Fuentes claims Jiffy Lube and its franchisees entered into an allegedly per se illegal nationwide antitrust conspiracy to suppress wages, inhibit employment mobility, and lessen professional work opportunities. *Id.* ¶ 67.  And because Jiffy Lube and the franchisees supposedly fraudulently concealed the alleged conspiracy from Fuentes and all other employees of all Jiffy Lube franchisees, Fuentes seeks to represent an alleged class of "[a]ll

---

[1] Fuentes does not mention that the franchise agreements his employers entered into were made in conjunction with Jiffy Lube's sale to the franchisees of outlets that had previously been operated by Jiffy Lube itself. *See* Ex. 1 (Franchise Agreement with Atlantic Coast Enterprises, LLC); Ex. 2 (Franchise Agreement with Mid-Atlantic Lubes, Inc.).  (As discussed more fully below, the Court may consider the franchise agreements without converting this motion into a summary judgment motion because the agreements are integral to and quoted in the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

persons in the United States who are current or former employees of a Jiffy Lube shop operated by Jiffy Lube or a franchisee from at least 2010 forward." *Id.* ¶¶ 74, 82-90.

## ARGUMENT AND AUTHORITIES

Fuentes's allegations do not state an antitrust claim and his complaint should be dismissed. Rule 12(b)(6) requires dismissal of claims where a plaintiff's allegations are not "plausible" and fail to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). In deciding a motion to dismiss, courts ignore "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a court must dismiss a complaint when the plaintiff fails to plead facts necessary to support an essential element of his or her claim. *See Brunson Commc'ns, Inc. v. Arbitron, Inc.*, 239 F. Supp. 2d 550, 570-71 (E.D. Pa. 2002) (dismissing antitrust claims where the complaint "provided no factual allegations" that would support essential element of the claim).

Generally, in ruling on a motion to dismiss, a court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2008); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1195 (3d Cir. 1993). Certain other materials may also be considered. For example, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington*, 114 F.3d at 1426 (citation and internal quotation marks omitted); *Pension Ben. Guar. Corp.*, 998 F.2d at 1196 ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

document").  A document can be "integral to or explicitly relied upon in the complaint," even though the plaintiff may not "explicitly refer to or cite" it.  *In re Burlington*, 114 F.3d at 1426.

Public records filed with governmental entities may also be considered in deciding whether to dismiss for failure to state a claim.  *See, e.g.*, *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("Other [documents], like the SEC filings attached by a number of the defendants, are matters of public record of which the court can take judicial notice."); *Sands*, 502 F.3d at 268 (matters in the public record).

**1.      Fuentes's claim is evaluated under the "rule of reason," but he has not alleged the necessary elements to plead a rule-of-reason claim.**

Fuentes challenges a provision in Jiffy's Lube's franchise agreements with its franchisees that prevents the franchisee from "employing or seeking to employ any person who is or within the preceding six months has been an employee of Franchisor or any System franchisee of Franchisor."  Doc. 1 ¶ 27.  Fuentes contends that this agreement is a per se illegal violation of the Sherman Act or alternatively that it should be evaluated with a "quick look" analysis.  *Id.* ¶¶ 98-99.  Fuentes is wrong on both counts.  The rule of reason applies to his claim.

**A.      The rule of reason applies to Fuentes' claim, which challenges a restraint involving firms at two different levels of the market.**

The rule of reason, and not the per se rule, should be used to evaluate to the franchise agreements in this case.  Only "[a] small group of restraints," typically those between competitors, "are unreasonable *per se* because they always or almost always tend to restrict competition and decrease output."  *Ohio v. American Express Co.*, 138 S. Ct. 2274, 2284 (2018). The Third Circuit has likewise recognized "the per se rules of illegality are the exception to antitrust analysis and are only employed in certain recognized categories."  *See Eichorn v. AT&T Corp.*, 248 F.3d 131, 144 (3d Cir. 2001).

Thus the default analysis for whether an agreement unreasonably restrains trade is the rule of reason, "under which an antitrust plaintiff must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) (emphasis added).

Agreements between a franchisor and franchisee, including agreements that the franchisee will not solicit or hire another franchisee's employees, are not among the categories for which per se treatment has been applied—nor should they be. That is because when an agreement, like here, is between firms at different levels of the market, it is a "vertical restraint," which is not likely to harm competition. *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988) ("Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints.").

Agreements between franchisors and franchisees are vertical agreements. *See Cont'l T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 58 (1977) (concluding that territorial restrictions imposed in franchise agreement are "vertical restraints" and subject to the rule of reason); *see also Philadelphia Fast Foods, Inc. v. Popeye's Famous Fried Chicken, Inc.*, 647 F. Supp. 216, 224 (E.D. Pa. 1986) ("The grant of exclusive territorial rights by a franchisor to a franchisee is a classical vertical arrangement that tends to promote interbrand competition by encouraging capital investment and advertising by the franchisee."); *see also* 14D Philip Areeda & Herbert Hovekamp, *Antitrust Law* ¶ 1437a ("[V]ertical agreements between actual or would-be suppliers and customers are everywhere. Sales, licenses, franchises, employment agreements, and information arrangements are commonplace. Their very ubiquity indicates that only a few will be of antitrust concern.").

Indeed, Fuentes acknowledges as much as he concedes that Jiffy Lube and its franchisees do not compete with one another.  Doc. 1 ¶ 24 ("Jiffy Lube operates its business on a franchise model.  Every Jiffy Lube shop is owned by an independent franchisee—Jiffy Lube itself does not operate any shops."); *id.* ¶ 29 ("As established by Jiffy Lube's standard franchise agreements, each Jiffy Lube franchise is operated as an independently owned and managed business, by an entity that is separate from Jiffy Lube.").[2]

Because the agreement Fuentes challenges is a vertical agreement, it must be analyzed under the rule of reason.  *In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 318 (3d Cir. 2010) ("Under the Supreme Court's jurisprudence, virtually all vertical agreements now receive traditional rule-of-reason analysis."); *AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006) ("Vertical, non-price restraints imposed by the supplier are analyzed under the rule of reason standard."); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1368 (3d Cir. 1996) ("Agreements between entities at different market levels are termed 'vertical restraints.' The Supreme Court has instructed that vertical restraints of trade . . . are evaluated under the rule of reason.").  Indeed, the Supreme Court has routinely recognized that vertical restraints are evaluated under the rule of reason *because* they often have procompetitive benefits. *See, e.g.*, *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 890 (2007) ("The justifications for vertical price restraints are similar to those for other vertical restraints. Minimum resale price maintenance can stimulate interbrand competition—the competition among manufacturers selling different brands of the same type of product. . . . The promotion of interbrand competition

---

[2] Fuentes implies that Jiffy Lube franchisees may have entered into agreements not to compete with each other.  *See, e.g.*, Doc. 1 ¶ 8.  The complaint, however, contains no factual allegations that would support that conclusion.  *See Iqbal*, 556 U.S. at 678; *Brunson Commc'ns*, 239 F. Supp. 2d at 570-71.

is important because the primary purpose of the antitrust laws is to protect this type of competition.") (internal quotation marks and citations omitted).

The Third Circuit's evaluation of claims similar to Fuentes's confirms that the rule of reason should be applied here. The plaintiffs in *Eichorn v. AT&T Corporation* were former employees of an AT&T affiliate, Paradyne, which was bought by Texas Pacific. The plaintiffs challenged under Section 1 of the Sherman Act agreements that AT&T (and some of its affiliates) and Texas Pacific made as part of the sale, which provided that AT&T and its affiliates would not hire Paradyne's employees before and after the sale to Texas Pacific. 248 F.3d 131, 139 (3d Cir. 2001). The plaintiffs argued that the agreements were per se illegal restraints of trade between horizontal competitors. *Id.*

Not so according to the Third Circuit, which held that the rule of reason applied to the plaintiffs' Section 1 claims (even though the agreement in that case was horizontal). The court noted that "there are no Supreme Court cases holding no-hire agreements entered upon the legitimate sale of a business to a third party are per se antitrust violations, and . . . the only two federal courts that have addressed the issue have declined to apply the per se rule." *Id.* at 144. The Third Circuit went on to hold that the "no hire agreement" plaintiffs challenged did not violate the rule of reason. *Id.* at 145-46.[3]

---

[3] Yet another reason the franchise agreements Fuentes challenges here are governed by the rule of reason is that they are ancillary to the sale of a business. At the time that Jiffy Lube executed the franchise agreements, it did so in conjunction with its sale to the franchisees of company-owned outlets that had been operated by Jiffy Lube. *See* Ex. 1 at 1 ("Pursuant to that certain Asset Purchase Agreement ('Purchase Agreement') dated April 16, 2008 between Franchisor and Franchisee, Franchisor is selling to Franchisee certain assets relating to the business of operating Service Centers in Palm Beach County, Broward County, and Dade County, all in Florida . . ."); Ex. 2 at 1 ("Pursuant to that certain Asset Purchase Agreement ('Purchase Agreement') dated May 23, 2008 between Franchisor and Franchisee, Franchisor is selling to Franchisee certain assets relating to [the] business of operating Service Centers at 20 locations in New Jersey and Pennsylvania. . . .").

Fuentes also suggests that the Department of Justice ("DOJ") believes that "no hire" agreements are per se illegal under the antitrust laws.  Doc. 1 ¶ 58.  But that mischaracterizes the DOJ's views about claims like Fuentes's.  The DOJ recently filed a statement in a pending antitrust case similar to this one in which the plaintiff claimed it was per se illegal for a franchisor to restrict hiring among franchisees.  The DOJ unequivocally stated that *vertical* agreements between franchisors and franchisees that restrict a franchisee's ability to hire employees of other franchisees are to be judged under the rule of reason.  *See* Corrected Statement of Interest of the United States of America, *Stigar v. Dough, Inc.*, No. 2:18-cv-00244-SAB (E.D. Wash. Mar. 8, 2019), Doc. 34 at 12 ("In the franchise context, the typical no-hire or no-solicitation agreement between a franchisor and franchisee precludes the franchisee from hiring or soliciting other franchisees' employees.  Such a typical restraint is a vertical allocation agreement limiting the number of employers competing for a given group of employees and its anticompetitive effects can be adequately policed under the rule of reason.").[4]

In sum, vertical agreements limiting a franchisee's ability to hire employees of other franchisees are not subject to the per se rule, but rather the rule of reason.  And to subject vertical restraints like this one to per se treatment would run afoul of not only the Supreme Court's holding that "a vertical restraint is not illegal per se," *Business Elecs. Corp.*, 488 U.S. at 735, but also the Third Circuit's holding that similar agreements even among *horizontal* competitors that were ancillary to the sale of a business are subject to the rule of reason.

---

[4] The DOJ further explained that "under the 'ancillary restraints doctrine,' a horizontal agreement ordinarily condemned as per se unlawful is 'exempt from the per se rule' if it is ancillary to a separate, legitimate venture between the competitors.  Ancillary restraints are subject to the rule of reason."  DOJ Corrected Statement at 3 (citing *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986) (Bork, J.))  A no-hire provision in the sale of a business from one competitor to another is an example of a vertical ancillary restraint subject to the rule of reason. *See Bus. Elecs. Corp.*, 785 U.S. at 730 n.4 ("The classic ancillary restrain is an agreement by the seller of a business not to compete within the market.").

### B.      A quick look approach is not appropriate.

Fuentes next argues that even if the per se rule does not apply, the restraint he challenges should be subjected to a "quick look" analysis.  Doc. 1 ¶ 99.  Not only would applying a quick look here run afoul of Supreme Court precedent that requires vertical restraints be evaluated under the rule of reason, it would also ignore the fact that the Third Circuit has consistently rejected use of a quick look approach to analyze Section 1 claims.

A "quick look" is an abbreviated rule-of-reason analysis.  *United States v. Brown Univ.*, 5 F.3d 658, 669 (3d Cir. 1993).  It has been applied where a restraint has obvious anticompetitive effects on markets or consumers, but either does not fall within the categories of restraints that have been deemed per se illegal or has potential procompetitive effects so that application of the per se rule is inappropriate.  *Id.*  "The object [of a quick look] is to see whether the experience of the market has been so clear, or necessarily will be that a confident conclusion about the principal tendency of a restriction will follow from a quick (or at least quicker) look, in place of a more sedulous one."  *Cal. Dental Ass'n v. Federal Trade Comm'n*, 526 U.S. 756, 780-81 (1999).

But the quick look approach does not apply to vertical restraints.  *Gordon v. Lewiston Hosp.*, 423 F.3d 184, 210 (3d Cir. 2005) (rejecting quick look analysis because "even if the Conditions were a restraint, they represent a non-price vertical restraint . . . , which we have held is reviewed under the traditional rule of reason").  A quick look is therefore not appropriate here.

Indeed, in nearly every instance the Third Circuit has considered whether a quick look approach should be used to analyze a Section 1 claim, it has rejected it.[5]

---

[5] In the one case where the Third Circuit endorsed using a quick look analysis—to evaluate Section 1 claims related to reverse-payment patent settlements between branded and generic pharmaceutical companies, *see In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012)—its approach was subsequently rejected by the Supreme Court, which vacated the Third Circuit's

For example, in *United States v. Brown University*, the Department of Justice challenged an agreement among universities to fix the amount of financial aid offered to students accepted to one or more of the schools that were parties to the agreement. 5 F.3d at 661. The Department of Justice sought an injunction to prevent the practice, which the district court concluded was a form of price fixing. *Id.* at 604. Although the district court recognized that price fixing is normally a per se violation of Section 1, it nonetheless applied a quick look approach to evaluate the agreement. *Id.* at 664. The Third Circuit, however, while also recognizing the horizontal nature of the agreement, vacated the district court's judgment against the defendant and concluded that the district court should have used a "full-scale rule of reason analysis" to evaluate the agreement. *Id.* at 678.

More recently, the Third Circuit refused to apply a quick look approach in *Deutscher Tennis Bund v. ATP Tour, Inc.,* 610 F.3d 820, 824 (3d Cir. 2010). There the plaintiffs, two tennis associations, challenged the defendant's decision to reorganize the men's professional tennis circuit in a way that disadvantaged a tournament owned by the plaintiffs. *Id.* At trial, the plaintiffs contended the jury should be instructed to evaluate the alleged restraint with a quick look. *Id.* The district judge, however, concluded that the jury should analyze the alleged restraint using the full rule-of-reason analysis. *Id.* at 827. The Third Circuit affirmed, concluding that the district court was right to reject the quick look approach because the "contours of the

---

judgment and remanded in light of the Court's decision concluding that the rule of reason should be used to evaluate those types of claims. *See Upsher Smith Labs. Inc. v. La. Wholesale Drug Co.*, 570 U.S. 913 (2013); *see also Fed. Trade Comm'n v. Actavis*, 570 U.S. 136, 158-59 (2013) (holding that reverse-payment settlement agreements should be evaluated under the rule of reason).

market . . . [were] not sufficiently well known or defined to permit the court to ascertain without the aid of extensive market analysis whether the challenged practice impairs competition." *Id.*[6]

Of course, here the Third Circuit has already recognized that judicial experience with no-hire agreements is limited at best—and thus courts evaluating these kinds of agreements should do so under the rule of reason. *See Eichorn*, 248 F.3d at 143 ("Because of the fact specific inquiry involved in antitrust analysis, the Supreme Court has recognized that claims not within established categories of antitrust liability are more appropriately analyzed under the rule of reason where courts can balance the effect of the alleged anti-competitive activity against its competitive purposes within the relevant product and geographic markets."). Here, as the challenged restraint is not only vertical, but also is one with which there is limited judicial experience, the rule of reason must be used to evaluate Fuentes's claim.

Nevertheless, to bolster his argument that a quick look is appropriate, Fuentes cites two rulings from outside the Third Circuit on motions to dismiss in pending cases where franchise employees allege that no-hire provisions in franchise agreements violate the Sherman Act. Doc. 1 ¶ 5 (citing *Deslandes v. McDonald's USA, LLC*, Case No. 17-cv-4857, 2018 WL 3105955 (N.D. Ill. June 25, 2018); *Butler v. Jimmy John's Franchise, LLC*, 331 F. Supp. 3d 786 (S.D. Ill. 2018)).

Neither case has reached class certification, summary judgment, or trial. Moreover, the court in *Deslandes* rejected the application of a per se rule. *Deslandes*, 2018 WL 3105955, at *7 ("Because the restraint alleged in the plaintiff's complaint is ancillary to an agreement with a

---

[6] The DOJ also agrees that a quick look is not the appropriate analysis for vertical no-hire agreements between franchisors and franchisees, like those challenged here. *See* Corrected Statement of Interest of the United States of America, *Stigar v. Dough Dough, Inc.*, No. 2:18-cv-00244-SAB (E.D. Wash. Mar. 8, 2019), Doc. 34 at 17 ("quick-look analysis does not apply to a vertical agreement between a franchisor and franchisee").

procompetitive effect, the restraint alleged in plaintiff's complaint cannot be deemed unlawful *per se*.").[7] And the court in *Jimmy John's* expressly declined to decide whether the per se rule, the rule of reason, or the quick look approach should apply and instead left all three options open. *Butler v. Jimmy John's Franchise, LLC*, 331 F. Supp. 3d 789, 797 (S.D. Ill. 2018) ("[T]he Court cannot decide at this early stage in the proceedings which rule will apply.").[8] The courts in those cases, of course, were not constrained by Third Circuit precedent rejecting both the per se rule and a quick look approach under the circumstances presented here.

In addition, the courts in both *Deslandes* and *Yi* rejected the per se rule because they recognized that there were procompetitive benefits to the challenged restraints. *Deslandes*, 2018 WL 3105955, at *7; Order Denying Defendants' Motion to Dismiss, *Yi v. SK Bakeries, LLC*, No. 18-cv-5627 (W.D. Wa. Nov. 13, 2018), Doc. 33 at 9 ("When a defendant advances plausible arguments that a practice enhances overall efficiency and makes markets more competitive, as Defendants do here, per se treatment is inappropriate and the rule of reason applies.") (internal quotation marks and citation omitted).

That should have caused those courts also to reject application of a quick look approach because once a defendant offers a procompetitive justification for a restraint, a court "must proceed to weigh the overall reasonableness of the restraint using a full-scale rule of reason

---

[7] The restraint alleged in *Deslandes* was not just vertical, but also horizontal as McDonald's entered into franchise agreements and also operated its own restaurants in direct competition with its franchisees.  2018 WL 3105955, at *6 ("The Court agrees that the restraint has vertical elements, but the agreement is also a horizontal restraint.  It restrains competition for employees among horizontal competitors: the franchisees and the McOpCos.").   In contrast, Fuentes acknowledges that "[e]very Jiffy Lube shop is owned by an independent franchisee—Jiffy Lube itself does not operate any shops."  Doc. 1 ¶ 24.

[8] A third dismissal decision also rejected the per se rule.  Order Denying Defendants' Motion to Dismiss, *Yi v. SK Bakeries, LLC*, No. 18-cv-5627 (W.D. Wa. Nov. 13, 2018), Doc. 33 at 9 ("To the extent that Plaintiff attempts to assert a 'per se' violation of the Sherman Act, she fails to allege sufficient facts in support of this theory.").

analysis." *Brown Univ.*, 5 F.3d at 669; *see also California v. Safeway, Inc.*, 651 F.3d 1118, 1134 (9th Cir. 2011) ("[I]f an arrangement might plausibly be thought to have a net procompetitive effect, or possibly no effect at all on competition, then a quick look form of analysis is inappropriate") (internal quotation marks and citation omitted).  It cannot be "obvious" that a restraint would have an anticompetitive effect if it has a countervailing pro-competitive benefit— that is precisely why the rule of reason requires a balancing of competitive effects to determine the restraint's *overall* effect on competition.

Restraints like the one Fuentes challenges here have a number of procompetitive benefits—as recognized not only in those decisions he relies on but in many other antitrust cases discussing the pro-competitive benefits of restraints imposed as part of a franchise system.  *See, e.g.*, *Cont'l T.V., Inc.*, 433 U.S. at 55 (describing benefits of vertical restraints imposed as part of franchise system).  It would make little sense to allow a plaintiff to circumvent pleading the elements of a rule-of-reason claim—and thus giving the parties and the Court fair notice of the scope of his claims and the subjects on which discovery will be needed—when he will ultimately be required to *prove* those rule-of-reason elements once a defendant introduces some pro-competitive benefit of the challenged restraint.

###### C.  Fuentes has failed to allege relevant product and geographic markets, which are necessary for a rule-of-reason claim.

Under the rule of reason, a plaintiff must show that the challenged agreement "produced adverse, anti-competitive effects within the relevant product and geographic markets."  *Brown Univ.*, 5 F.3d at 668-69; *see also Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 922 F. Supp. 1055, 1060 (E.D. Pa. 1996) ("A vertical non-price restraint . . . is governed by the rule of reason, which requires an examination of whether the restraint had an anti-competitive effect in the relevant market.").

Thus to adequately allege a rule-of-reason claim, a plaintiff must "defin[e] the relevant market." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997); *see also Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 253 (3d Cir. 2010) ("A plaintiff asserting a Section 1 claim also must allege four elements: (1) concerted action by the defendants; [2] that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal and (4) that it was injured as a proximate result of the concerted action.") (quotation marks and citation omitted); *Queen City Pizza*, 922 F. Supp. at 1060 ("[T]o state a Sherman Act claim under either § 1 or § 2, a plaintiff must identify the relevant product and geographic markets and allege that the defendant exercises market power within those markets.").

Courts routinely dismiss rule-of reason claims where, as here, a plaintiff does not define a relevant product or geographic market.  Dismissal is particularly appropriate when a plaintiff does not "define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in the plaintiff's favor."  *Queen City Pizza*, 124 F.3d at 436 (affirming dismissal of claims under Section 1 and Section 2 of the Sherman Act for failure to adequately allege relevant product and geographic markets).

Fuentes's complaint does not contain any allegations about relevant product or geographic markets.  Because Fuentes's claim is subject to the rule of reason, and he has not made any allegations attempting to define relevant product or geographic markets, his complaint must be dismissed.

2.     **Fuentes does not have standing under Article III to pursue injunctive relief because he is no longer subject to the agreement that he challenges and Jiffy Lube has agreed not to enforce this provision in its franchise agreements.**

Fuentes has also sued for injunctive relief. Doc. 1 ¶¶ 7, 102, 103.  But Fuentes is no longer a Jiffy Lube employee and indeed, he "left his employment with Jiffy Lube" in July 2018—that is more than six months ago.  *Id.* ¶ 67.  Fuentes does not allege that he has applied to work at a Jiffy Lube franchise again or that he plans to do so.  Because Fuentes could no longer be affected by the provision he challenges, he does not have standing to seek injunctive relief.

Fuentes's claim for injunctive relief fails for other reasons too.  Namely, Jiffy Lube no longer includes the provision in its franchise agreements and indeed has agreed, as part of a settlement with the Washington Attorney General, not to enforce the provision against its franchisees.  Thus, even were Fuentes still employed by a Jiffy Lube franchisee, neither he nor any other Jiffy Lube franchise employee would be affected by the provision given that it is no longer enforced and no longer will be.

A.     **Fuentes is not subject to the provision because he does not work at Jiffy Lube and has not for over six months and has not alleged that he will return to work at Jiffy Lube.**

Fuentes does not have standing to seek injunctive relief.  A plaintiff must demonstrate standing for each type of relief he seeks.  *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 185 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To have standing, a plaintiff must have suffered an injury in fact—an invasion of a legally protected interest that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted).  "Allegations of a possible future injury do not satisfy the requirements of Art[icle] III."  *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).  "To ensure that the alleged injury is not too speculative for Article III purposes," it must be "certainly impending."  *Lujan* 504 U.S. at 564 n.2.  "When, as in this case,

prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct." *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 223 (3d Cir. 2012).

Here, Fuentes alleges that he no longer works at Jiffy Lube and he has not for more than six months. Doc. 1 ¶ 67. Fuentes has not alleged that he has been hired by Jiffy Lube again, that he has applied to work at Jiffy Lube again, or even that he has plans to do so. The Third Circuit has held plaintiffs in similar circumstances do not have standing to pursue claims for injunctive relief. For example, in *McNair v. Synapse Group*, former customers of a magazine subscription marketer sought injunctive relief against the marketer for its magazine subscription renewal practices under state consumer protection laws. 672 F.3d at 215, 219. The court held that the plaintiffs—as *former* customers—did not have standing to seek injunctive relief. The plaintiffs "are not Synapse customers and are thus not currently subject to Synapse's allegedly deceptive techniques for obtaining subscription renewals . . . . Unless they decide to subscribe again, then, there is no reasonable likelihood that they will be injured by those techniques in the future." *Id.* at 224; *see also Landau v. Vidrin Energy PA LLC*, 223 F. Supp. 3d 401, 420 (E.D. Pa. 2016) (dismissing injunctive claims challenging "unlawful practice of charging excessive undisclosed rates" to customers brought by a *former* customer for lack of standing).

Because he is no longer employed by a Jiffy Lube franchisee (and has not plausibly alleged that he will be), Fuentes has made no showing that he is or is likely to be affected by the no hire provisions in Jiffy Lube's franchise agreements. Fuentes thus does not have standing to sue Jiffy Lube for injunctive relief and his request for injunctive relief must be dismissed. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 364-65 (2011) (recognizing that the court of appeals properly concluded that "those plaintiffs no longer employed by Wal-Mart lack standing

to seek injunctive or declaratory relief against its employment practices" and that former employees "have no . . . need for prospective relief").

**B.     Jiffy Lube has agreed to remove the "no hire" clause from new franchise agreements and not to enforce the clause in any existing franchise agreements.**

Even if Fuentes were still employed by a Jiffy Lube franchisee (or within six months of leaving his employment with a Jiffy Lube franchisee), he would still not have standing to pursue claims for injunctive relief in this case.  That is because Jiffy Lube no longer includes the provision in new franchise agreements and it has agreed that it will no longer enforce the provision in its existing franchise agreements.  *See* Ex. 3, Jiffy Lube International, Inc. Assurance of Discontinuance, *In re Franchising No Poaching Provisions*, Case No. 18-2-5777-2 SEA at ¶ 3.1.1 (Wash. Sup. Ct. Dec. 20, 2018) ("[Jiffy Lube] will no longer include no-poach provisions in any of its future franchise agreements"); *id.* ¶ 3.1.2 ("[Jiffy Lube] will no longer enforce no-poaching agreements in any of its existing franchise agreements"); *see also* Doc. 1 ¶ 6 ("at least 30 national chains have already entered consent decrees with the Washington Attorney General, pledging to remove no-poach provisions from their franchise agreements"); *id.* ¶60 ("Washington Attorney General Bob Ferguson announced that in order to avoid lawsuits, certain franchisors had reached agreements to discontinue enforcement of no-poach provision and to take steps to remove non-poach language from franchise agreements going forward").  Without any likelihood that the agreement will be enforced or entered into again, there is no need for prospective relief.

**3.     Fuentes's fraudulent concealment allegations do not allege conduct sufficient to establish fraudulent concealment as a matter of law and fail to meet the particularity requirements of Rule 9(b).**

Although Fuentes only began working at a Jiffy Lube outlet in October 2015, he seeks to represent a class of employees and former employees from "at least 2010" forward.  Doc. 1 ¶¶ 61, 74.  But antitrust claims are subject to a four year statute of limitations.  15 U.S.C. § 15b

("Any action to enforce any cause of action under section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued.").  And the statute of limitations bars claims that arose earlier than four years before the filing of Fuentes's complaint on November 29, 2018 unless there is an applicable exception or excuse.

The only excuse Fuentes alleges to try to avoid the limitations bar is the equitable tolling doctrine of fraudulent concealment.  Doc. 1 ¶ 82.  Fuentes's allegations, however, are insufficient to establish fraudulent concealment, which the Third Circuit has described as "an extraordinary remedy which should only be extended sparingly." *Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 161 (3d Cir. 2016).  Thus, a plaintiff invoking fraudulent concealment must allege "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) . . . the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." *Id*.  In addition, allegations of fraudulent concealment must meet Rule 9(b)'s heightened pleading standard and be pleaded with particularity.  *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984) ("[F]raud, and thus fraudulent concealment, must be pleaded with particularity.") (citing Fed. R. Civ. P. 9(b)); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake").

## A.    Fuentes's allegations of "concealment" fail as a matter of law.

A plaintiff claiming fraudulent concealment must show that the defendant *actively* misled the plaintiff.  *Cunningham*, 814 F.3d at 161.  To satisfy this element, the plaintiff needs to allege that the defendant "engaged in affirmative acts of concealment designed to mislead the plaintiffs." *Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000).  Here, Fuentes has made two allegations concerning how he believes Jiffy Lube supposedly "concealed" the existence of the no-hire agreement with its franchisees.

First, Fuentes alleges that neither Jiffy Lube nor its franchisees *disclosed* the existence of the agreement to him or other members of the proposed class.  Doc. 1 ¶ 83.  But as the Third Circuit has made clear, fraudulent concealment requires an *affirmative act* of concealment.  *Forbes*, 228 F.3d at 487.  Silence cannot satisfy this burden.  *See, e.g.*, *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1472 (6th Cir. 1988) (concluding that "[m]ere silence, or one's unwillingness to divulge one's allegedly wrongful activities, is not sufficient" to show fraudulent concealment).

Second, Fuentes alleges that Jiffy Lube made "public statements" that concealed the existence of the agreement.  Doc. 1 ¶ 84.  Fuentes does not explain what these statements were (and how they were false), when they were made, or how they actively misled him or other members of the proposed class.  In short, these are the sort of conclusory allegations that do not even satisfy Rule 12(b)(6)'s pleading requirements, much less Rule 9(b)'s requirement that Fuentes set out with particularity the circumstances of the alleged fraud.  *See Lum v. Bank of America*, 361 F.3d 217, 223 (3d Cir. 2004) (holding that Rule 9(b) requires plaintiff to allege "date, place or time of fraud" or otherwise "inject[] precision or some measure of substantiation into their allegations of fraud," as well as the general content of the misrepresentation).  Without more than conclusory and legally insufficient allegations, Fuentes's fraudulent concealment claim should be dismissed.

**B.      Jiffy Lube's franchise agreement is publicly available and has been for years—making any claim that the agreement was concealed from Fuentes or anyone else implausible.**

Fuentes's claim that Jiffy Lube fraudulently concealed the existence of the no-hire agreement fails for another, independent reason:  it is simply not true.  Even if he had pleaded his claim of fraudulent concealment with greater specificity, it would still be insufficient because Jiffy Lube's franchise agreement—the very agreement on which he bases his claim—is publicly

available and has been since at least 2011.  There cannot be "concealment" when the agreement the plaintiff challenges is publicly available.  And certainly no allegation of concealment would be plausible given the incontestable fact that the agreement on which Fuentes's claim is based is publicly available and has been for years.

For example, copies of Jiffy Lube's form franchise agreement for each year going back to 2010—which include the provision that Fuentes quotes in his complaint—are available for download on the internet for free—and have been not only before Fuentes filed his complaint, but for years before Fuentes even began working at a Jiffy Lube franchise.  *Compare* Doc. 1 ¶ 61 (alleging Fuentes began working at a Jiffy Lube franchise in October 2015) with Ex. 4 (noting that form franchise agreement posted to internet in 2011).

Offering franchises is heavily regulated, both by the Federal Trade Commission and by many states.  *See, e.g.*, 16 C.F.R. § 436.1 et seq.  Some states require franchisors to file copies of franchise disclosure documents and form franchise agreements with the states—and they make those documents available to the public, free of charge.

Minnesota is one such state and it requires franchisors, like Jiffy Lube, to file an application for registration that includes, among other things, "a copy of the entire franchise contract or agreement proposed for use, including all amendments thereto."  Minnesota Stat. § 80C.04(h).  Minnesota law makes those documents available to the public.  Minnesota Stat. § 80C.22 ("All applications, notices, reports and other documents filed under sections 80.C01 to 80C.22 shall be open to the public in accordance with rules prescribed by the commissioner.  The commissioner may publish information filed with, or obtained by, the commissioner, if, in the judgment of the commissioner, such action is in the public interest.").  Minnesota then publishes those documents on the internet, including Jiffy Lube's.  And anyone can search the Minnesota

Department of Commerce's website for Jiffy Lube's franchise filings, which include its form franchise agreement and the provision that Fuentes challenges, by name and download those filings for free.[9]

Given that the agreement Fuentes challenges is publicly available and has been since at least 2011, he cannot plausibly allege that the agreement was concealed (fraudulently or otherwise) and his fraudulent concealment claim must be dismissed.

## CONCLUSION

Fuentes challenges vertical arrangements that must, under Third Circuit and Supreme Court precedent, be evaluated under the rule of reason, yet he has failed to plead relevant product and geographic markets as required to allege a rule-of-reason claim. He seeks prospective relief to enjoin a practice that by its very terms does not affect him and that will not given Jiffy Lube's agreement to discard the provision from future franchise agreements and not enforce it any longer in existing franchise agreements. And he pleads that the agreement he challenges was fraudulently concealed even though he cannot allege any acts of "concealment" taken by Jiffy Lube and the agreement he challenges has been publicly available to download on the internet for *years* before he began his employment at Jiffy Lube.

For all these reasons, Fuentes's complaint should be dismissed.

---

[9] A screenshot of the website and the results of a search for "Jiffy Lube" are attached as Exhibit 4. The screenshot shows both the date the document was filed and the date it was posted on the website. A copy of excerpts from Jiffy Lube's franchise registration application, including the provisions Fuentes challenges, downloaded from the Minnesota Department of Commerce's website is attached as Exhibit 5.

Dated: April 15, 2019                             Respectfully submitted,


                                                  */s/ Andrea L. D'Ambra*
                                                  Andrea L. D'Ambra (PA 93385)
                                                  Norton Rose Fulbright US LLP.
                                                  1301 Avenue of the Americas
                                                  New York, NY 10019-6022
                                                  Telephone:      (212) 318-3000
                                                  Telecopier:     (212) 408-5100
                                                  andrea.dambra@nortonrosefulbright.com

                                                  Layne E. Kruse*
                                                  Anne M. Rodgers*
                                                  Eliot F. Turner*
                                                  Norton Rose Fulbright US LLP.
                                                  1301 McKinney, Suite 5100
                                                  Houston, Texas 77010-3095
                                                  Telephone:      (713) 651-5151
                                                  Telecopier:     (713) 651-5246

* Applications for admission
*pro hac vice* forthcoming


                                *Attorneys for Defendant Jiffy Lube International, Inc*.

**CERTIFICATE OF SERVICE**

I certify that on April 15, 2019, I filed this document on Court's docket using the Court's CM/ECF system.  Based on the Court's records, all counsel of record were served with a copy of the foregoing document by electronic means.

/s/ *Andrea L. D'Ambra*
Andrea L. D'Ambra