**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VICTOR FUENTES, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>ROYAL DUTCH SHELL PLC, et al.,<br><br>                    Defendants. | CIVIL ACTION NO. 18-05174-AB |

**PLAINTIFF'S OPPOSITION**

**TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 3

LEGAL STANDARD .............................................................................................................. 5

MEMORANDUM OF LAW ................................................................................................... 5

  A.  Plaintiff States a Claim Under the Sherman Act Because His Complaint Alleges
      Anticompetitive Conduct and Resulting Antitrust Injury .................................................. 5

    1. Determining the Antitrust Rule of Analysis is Premature on a Motion to Dismiss ........... 6

    2. Plaintiff Adequately Alleges That Jiffy Lube's Horizontal Restraint
       is a Per Se Violation of Section 1 of the Sherman Act ...................................................... 7

      a. The Complaint alleges that Jiffy Lube's no-hire restraint is horizontal
         in nature and operates to suppress wages. ..................................................................... 8

      b. Recent DOJ Statements of Interest are less persuasive than earlier
         pronouncements that no-poach agreements are per se unlawful. ................................. 11

    3. At Most, Plaintiff's Claim is Subject to the Quick-Look Rule ........................................ 13

    4. Jiffy Lube Cannot Prevail on This Motion by Arguing That Its Restraint
       is "Ancillary" to a Franchise Relationship ..................................................................... 14

  B.  Plaintiff Has Standing to Pursue Injunctive Relief .......................................................... 16

  C.  Plaintiff Has Properly Alleged Fraudulent Concealment ................................................. 18

LEAVE TO AMEND ............................................................................................................. 20

CONCLUSION ....................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 .................................................................................................... 16

*Arizona v. Maricopa Cty. Med. Soc'y*,
   457 U.S. (1982) ............................................................................................. 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 5

*Beltran v. InterExchange, Inc.*,
   No. 14-cv-03074, 2016 WL 695967 (D. Colo. Feb. 22, 2016) ................................ 11

*Beltran*,
   176 F. Supp. 3d 1066 (D. Colo. 2016) ............................................................... 11

*Bethlehem Steel Corp. v. Fishbach and Moore, Inc.*,
   641 F.Supp. 271 (E.D. Pa. 1986) ...................................................................... 19

*Butler v. Jimmy John's Franchise, LLC*,
   331 F. Supp. 3d 786 (S.D. Ill. 2018) ........................................................... passim

*California Dental Ass'n v. F.T.C.*,
   526 U.S. 756 (1999) ................................................................................. 13, 14

*Campbell-Ewald Co. v. Gomez*,
   136 S. Ct. 663 (2016) ..................................................................................... 17

*Cernuto, Inc. v. United Cabinet Corp.*,
   595 F.2d 164 (3d. Cir. 1982) ............................................................................. 8

*Christensen  v. Harris Cty.*,
   529 U.S. 576 (2000) ....................................................................................... 12

*Cont'l T.V., Inc. v. GTE Sylvania, Inc.*,
   433 U.S. 36 (1977) ......................................................................................... 11

*Cunningham v. M&T Bank Corp.*,
   814 F.3d 156 (3d Cir. 2016) ............................................................................. 19

*Deslandes v. McDonald's USA, LLC*, No. 17 C,
   4857, 2018 WL 3105955 (N.D. Ill. June 25, 2018) ....................................... passim

*Doe v. Az. Hosp. & Healthcare Ass'n*,
   No. CV 07-1292, 2009 WL 1423378 (D. Ariz. Mar. 19, 2009) ............................... 8

*Eichorn v. AT&T Corp.*,
   248 F.3d 131 (3d Cir. 2001) ............................................................................. 15

*Eisai, Inc. v. Sanofi Aventis U.S. LLC*,
   821 F.3d 394 (3d Cir. 2016) .............................................................................. 5

*F.T.C. v. Superior Court Trial Lawyers Ass'n*,
   493 U.S. 411 (1990) ......................................................................................... 7

*Fleischman v. Albany Med. Ctr.*,
   728 F. Supp. 2d 130 (N.D.N.Y. 2010) ................................................................. 8

*Foman v. Davis*,
371 U.S. 178 (1962) ............................................................................................ 20

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
528 U.S. 167 (2000) ...................................................................................... 17, 18

*FTC v. Sysco Corp.*,
113 F. Supp. 3d 1 (D.D.C. 2015) ...................................................................... 12

*In re Animation Workers Antitrust Litig.*,
123 F. Supp. 3d 1175 (N.D. Cal. 2015) ........................................................... 11

*In re Blue Cross Blue Shield Antitrust Litig.*,
26 F. Supp. 3d 1172 (N.D. Ala. 2014) ............................................................... 6

*In re High-Tech Employee Antitrust Litig.*,
856 F. Supp. 2d 1103 (N.D. Cal. 2012) ........................................................ 6, 11

*In re Musical Instr. & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ............................................................................ 9

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 1:12-md-2343, 2013 WL 2181185 (E.D. Tenn. May 20, 2013) ................. 19

*In re Wholesale Grocery Prods. Antitrust Litig.*,
752 F.3d 728 (8th Cir. 2014) .............................................................................. 6

*Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) ............................................................................. 14

*Knox v. Serv. Employees Int'l Union, Local*,
*1000*, 567 U.S. 298 (2012) ............................................................................... 17

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
551 U.S. 887 (2007) ...................................................................................... 9, 16

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
542 F.3d 290 (2d Cir. 2008) ............................................................................. 14

*Mandeville Island Farms v. Am. Crystal Sugar Co.*,
334 U.S. 219 (1948) ............................................................................................ 7

*McNair v. Synapse Group, Inc.*,
672 F.3d 213 (3d Cir. 2012) ............................................................................. 18

*Med. Ctr. at Elizabeth Place LLC v. Premier Health Partners*,
2017 WL 3433131 (S.D. Ohio Aug. 9, 2017) ................................................... 15

*Murphy v. Hunt*,
455 U.S. 478 (1982) .......................................................................................... 16

*Nat'l Coll. Athletic Ass'n v. Bd. of Regents of Univ. of*,
*Okla.*, 468 U.S. 85 (1984) ............................................................................. 6, 14

*Nat'l Macaroni Mfrs. Ass'n v. F.T.C.*,
345 F.2d 421 (7th Cir. 1965) .............................................................................. 7

*Northern Pac. R. Co. v. United States*,
356 U.S. 1 (1958) ................................................................................................ 5

*Nw. Envtl. Def. Ctr. v. Gordon*,
849 F.2d 1241 (9th Cir. 1988) .......................................................................... 17

*Ohio v. Am. Express Co.*,
  138 S. Ct. 2274 (2018) ........................................................................... 11
*Oregon Nat. Res. Council v. U.S. Bureau of Land Mgmt.*,
  470 F.3d 818 (9th Cir. 2006)................................................................... 17
*Polygram Holding, Inc. v. F.T.C.*,
  416 F.3d 29 (D.C. Cir. 2005) .................................................................. 15
*Seaman v. Duke Univ.*,
  No. 1:15-CV-462, 2018 WL 671239 (M.D.N.C. Feb. 1, 2018)............... 11
*Skidmore v. Swift & Co.*,
  323 U.S. 134, 65 S. Ct. 161, 89 L.Ed. 124 (1944) .......................... 12, 13
*State Oil Co. v. Khan*,
  522 U.S. 3 (1997) ...................................................................................... 5
*Todd v. Exxon Corp.*,
  275 F.3d 191 (2d Cir. 2001)...................................................................... 8
*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
  552 F.3d 430 (6th Cir. 2008).................................................................... 9
*Toys "R" Us, Inc. v. F.T.C.*, 221 F.3d 928, 936 (7th Cir. 2000) ................. 9
*United States v. Apple, Inc.*,
  791 F.3d 290 (2d Cir. 2015)...................................................................... 9
*United States v. Concentrated Phosphate Export Assn.*,
  393 U.S. 199 (1968) ................................................................................ 18
*United States v. eBay*,
  968 F. Supp. 2d 1030 (N.D. Cal. 2013) ................................................... 5
*United States v. H & R Block, Inc.*,
  833 F. Supp. 2d 36 (D.D.C. 2011) ......................................................... 12
*United States v. Socony-Vacuum Oil Co.*,
  310 U.S. 150 (1940) ............................................................................ 6, 7
*United States v. Topco Assocs., Inc.*,
  405 U.S. 596 (1972) ................................................................................ 16
*West Penn Allegheny Health Sys., Inc. v. UPMC*,
  627 F.3d 85 (3d Cir. 2010) ................................................................... 5, 6

**Rules**

Fed. R. Civ. P. 8(a)(2).................................................................................. 5

## INTRODUCTION

From 2010 to 2018, Defendant Jiffy Lube International, Inc. organized, orchestrated, and enforced a horizontal conspiracy to suppress the wages of Plaintiff Victor Fuentes and all other employees at Jiffy Lube service centers nationwide.  It did so by contractually prohibiting franchisees from hiring each other's employees:  No owner shall "employ or seek to employ any person who is or within the preceding six months has been an employee of [Jiffy Lube] or of any System franchisee of [Jiffy Lube]."  Doc. 1 (Complaint) ¶ 27 (quoting franchise agreement).

This no-solicitation and no-hire agreement between and among Jiffy Lube and its franchisees restrained competition and suppressed wages.  Convinced of the same, several state attorneys general threatened to sue Jiffy Lube in 2018.  The company then discontinued this anti-competitive arrangement, but it has not compensated the thousands of low-wage workers it unlawfully restrained and economically harmed for almost a decade.

Agreements among competitors to fix wages are quintessential per se violations of Section 1 of the Sherman Antitrust Act.  That such an arrangement is memorialized in a franchise document does not alter this conclusion.  The Complaint amply alleges a per se violation, detailing how Jiffy Lube's no-hire provision horizontally restrains franchisees and operates to depress employee wages and mobility.  By acting in concert with each other and Jiffy Lube, but against their unilateral economic interests, Jiffy Lube franchisees protected themselves from having their employees hired by competing Jiffy Lube service centers, allowing them to avoid paying their employees market wages or providing them with attractive working conditions and opportunities for promotion.  *Id*. at ¶ 36.

Rather than confront these allegations, Jiffy Lube seeks to recast them.  According to Jiffy Lube, the mere fact that this no-hire agreement is part of franchise documents means the

restraint is automatically vertical in nature and thus must be evaluated under the rule of reason. And, according to Jiffy Lube, the Complaint is missing the factual elements of a rule-of-reason claim.

These arguments, however, do not even make it past the starting gate. For one, courts often decline to determine at the pleadings stage which antitrust rule of analysis applies, because the issue is factually intensive and more properly reserved for later stages of the case, such as at summary judgment.

For another, it is established law that the identity of the party who originates a restraint or the category of document containing the restraint does not alone determine whether the restraint is horizontal or vertical. What matters, instead, is the *nature* of the restraint. And the nature of the restraint here is plainly horizontal in that it prohibits franchisees—direct competitors for labor—from competing.

Courts agree; and in fact Jiffy Lube is hardly alone in having imposed such restraints as part of a franchise agreement. Other companies, such as McDonald's and Jimmy Johns, imposed the same anti-competitive no-poach provision in their respective franchise arrangements. And when McDonald's and Jimmy Johns were sued under the Sherman Act for imposing materially identical no-poach language in a franchise document, district courts denied motions to dismiss, holding that at the pleadings stage the complaints plausibly alleged that these provisions may be horizontal in nature.

Jiffy Lube's grounds to dismiss the Complaint's fraudulent concealment allegations and claim for injunctive relief also fail. Plaintiff has properly pleaded fraudulent concealment, alleging that Jiffy Lube actively misled Fuentes with its self-concealing conspiracy, and so Fuentes and the class should be allowed to recover antitrust damages dating back to 2010

(beyond the four-year statute of limitations).  And while Fuentes does not currently work at Jiffy

Lube, the Complaint alleges that he has previously left and been rehired by Jiffy Lube franchises,

making it plausible that he will do so in the future.  As for whether there is any likelihood that

the conduct will recur, Jiffy Lube makes no attempt to demonstrate that its voluntary cessation of

the no-poach agreement moots Plaintiff's claim for injunctive relief.

For these reasons, the Motion should be dismissed in its entirety.

## STATEMENT OF FACTS

Jiffy Lube shops offer lubrication, oil change, and light repair services for cars and light

trucks. Doc. 1 ¶¶ 12, 18 and 24.  There are more than 2,000 locations in the United States and

some in Canada.  *Id.* ¶¶ 2 and 24.  100% of these shops are operated by franchisees under a

standardized franchise agreement drafted by Jiffy Lube.  *Id.* ¶¶ 12 and 24.  Jiffy Lube franchises

are independently owned and operated businesses, responsible for their own day-to-day

operations, typically performing under twenty-year term franchise agreements.  *Id.* ¶¶ 12, 18, 24,

26 and 29-30.  Franchisees and Jiffy Lube operate as independent contractors as to each other,

specifically disclaiming any "agency, employment or partnership" relationship.  *Id.* ¶¶ 29.

Except for the no-hire provision, Jiffy Lube and franchisees expressly agree that franchisees are

completely independent in employee hiring.  *Id.* ¶¶ 31 and 41.

All of Jiffy Lube's franchisees compete with each other for employees.  *Id.* ¶¶ 30-31 and

52.  While the Complaint alleges that in a properly functioning market, Jiffy Lube franchisees

are labor competitors, by executing Jiffy Lube's franchise agreement, the franchisees agreed not

to compete for each other's employees.  *Id.* ¶¶ 8, 31, 40, 43 and 52.  The agreements are direct

evidence, indeed *admissions*, by every single franchisee who executed a Jiffy Lube franchise

agreement at least as far back as 2010, of an explicit agreement to not "employ or seek to

employ" any person who currently is, or within the preceding 6 months was, employed by another Jiffy Lube franchisee.  *Id.* ¶ 27.

Faced with government scrutiny of its unlawful practices, Jiffy Lube relented and partly reversed course.  In December 2018, Jiffy Lube entered into an "Assurance of Discontinuance" (AOD) with the Attorney General of Washington, pledging to not include a "no-poach provision[]" in future franchise agreements and not to enforce existing agreements.  Doc. 11-4 ¶ 3.1.2.  This leaves in place the unlawful no-poach provisions in previous franchise agreements, and continues to provide a tool that franchisees could potentially use to continue the conspiracy with each other.

Plaintiff Fuentes worked at Jiffy Lube shops in Montgomeryville, Pennsylvania and Fort Lauderdale and Boca Raton, Florida.  *Id.* ¶¶ 61, 65-66.  He was initially employed as an entry level technician, but his excellent work earned him promotions to upper bay technician, customer service advisor and shift manager.  *Id.* ¶¶ 61, 65-66.  He was promised pay raises associated with some of those promotions but never received them.  *Id.* ¶ 62.  When Fuentes decided to move back to Pennsylvania at the end of 2017, the no-hire agreement prohibited him from transferring to a Jiffy Lube shop in Pennsylvania; and in July 2018, Fuentes left Jiffy Lube.  *Id.* ¶ 62.  As a result of the no-hire agreement, Fuentes and other employees in Jiffy Lube shops suffered "reduced wages, reduced employment benefits, loss of professional growth opportunities, and worsened working conditions because of the express agreement to restrain trade among Jiffy Lube and its franchisees, as orchestrated, facilitated and enforced by Jiffy Lube itself."  *Id.* ¶ 69.  Under Section 1 of the Sherman Act, Plaintiff seeks damages for himself and similarly situated Jiffy Lube shop employees for harm caused by Jiffy Lube's no-hire provision.

## LEGAL STANDARD

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  That statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  There is no heightened pleading standard for antitrust cases.   *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility "is not akin to a 'probability requirement,'" but requires the plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Twombly*, 550 U.S. at 556).

## MEMORANDUM OF LAW

### A. Plaintiff States a Claim Under the Sherman Act Because His Complaint Alleges Anticompetitive Conduct and Resulting Antitrust Injury

To state a claim under Section 1 of the Sherman Act, a plaintiff must allege that "[defendant] engaged in anticompetitive conduct and that [plaintiff] suffered antitrust injury as a result." *Eisai, Inc. v. Sanofi Aventis U.S. LLC*, 821 F.3d 394, 402 (3d Cir. 2016).  An antitrust complaint need only show that the challenged restraint "will fail under one of the three rules of analysis: the rule of reason, per se, or quick look," and "is not obliged to plead under each possible rule." *United States v. eBay*, 968 F. Supp. 2d 1030, 1037 (N.D. Cal. 2013).

Here, Plaintiff's Complaint alleges that Jiffy Lube's no-hire provision "[has] such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that [it is] deemed unlawful per se." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) (*citing Northern Pac. R. Co. v. United States*, 356 U.S. 1, 5 (1958)).  The per se illegality rule applies

when a business practice like the no-hire agreement between and among Jiffy Lube and its franchisees is "so plainly anticompetitive that . . .[it is] conclusively presumed to unreasonably restrain trade." *West Penn Allegheny Health Sys.*, 627 F.3d at 99.  A plaintiff need not plead or prove a relevant market or market power for restraints deemed illegal per se, as would be required under rule of reason review.   *United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 224 n.59 (1940).

### 1.  Determining the Antitrust Rule of Analysis is Premature on a Motion to Dismiss

Jiffy Lube's motion depends entirely on its belief that this Court should reject per se or quick look analysis and rule at the pleading stage that it will apply a full-blown rule of reason analysis.  But Courts rarely decide which rule of analysis applies to a case on a motion to dismiss.  Indeed, in an antitrust action involving a franchise no-poach agreement analytically identical to Jiffy Lube's, the court in *Butler v. Jimmy John's Franchise, LLC*, 331 F. Supp. 3d 786, 796-97 (S.D. Ill. 2018) denied defendant's motion to dismiss, deferring ruling on which standard applies until it can evaluate evidence as to whether the franchises are truly independent and compete against one another.  Other courts agree that while the mode of analysis is a legal question, "it is predicated on a *factual inquiry* into the restraint's competitive effect."   *In re Blue Cross Blue Shield Antitrust Litig.*, 26 F. Supp. 3d 1172, 1186 (N.D. Ala. 2014) (denying Rule 12 motion attacking per se claim) (emphasis in original); *Nat'l Coll. Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 104 (1984)).  *See also In re Wholesale Grocery Prods. Antitrust Litig.*, 752 F.3d 728, 733–34 (8th Cir. 2014) (while mode of analysis is question of law, "underpinning that purely legal decision are numerous factual questions"); *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1122 (N.D. Cal. 2012) ("*High-Tech*") (issue more appropriately decided at summary judgment).

### 2.  Plaintiff Adequately Alleges That Jiffy Lube's Horizontal Restraint is a Per Se Violation of Section 1 of the Sherman Act

If the Court does decide at this stage what standard applies, it should adopt the per se rule.  (To be clear, Jiffy Lube does not contest that the Complaint adequately alleges the elements of a per se violation of the Sherman Act.)  It has long been the case that a horizontal agreement among competitors to fix prices is a per se violation of the antitrust laws.  *See Socony-Vacuum Oil Co.*, 310 U.S. at 223 ("a combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity . . . is illegal per se."); *F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 422 (1990) (boycott among competing lawyers in order to increase pay rates is "a classic restraint of trade within the meaning of Section 1").  It matters not whether any specific price was literally "fixed" or agreed to rather than simply depressed.   *Socony-Vacuum*, 310 U.S. at 222 (price-fixing illegal where prices "were not fixed in the sense that they were uniform and inflexible"); *F.T.C. v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 422 (1990) (constriction of supply "the essence of 'price-fixing.'").

The same rules apply, as here, in the mirror image buyers' conspiracy context.  *See, e.g., Mandeville Island Farms v. Am. Crystal Sugar Co.*, 334 U.S. 219, 235 (1948) (complaint alleging buyers' conspiracy survived motion to dismiss because challenged conduct was precisely the type of activity condemned by Section 1); *Nat'l Macaroni Mfrs. Ass'n v. F.T.C.*, 345 F.2d 421, 426–27 (7th Cir. 1965) (agreement among producers to limit input purchasing per se illegal because effect of restriction was to reduce price).  In this context, employees are suppliers/sellers of labor services, and employers are the buyers.  "Standing for employees thus parallels that for 'suppliers' generally . . . . [T]here is no reason why the business of selling one's own employment services should be any less a 'business' than the business of selling other

7

goods and services." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* §352a-b (4th ed. 2018 Cum. Supp. 2010-2017). Wage-fixing by employers is thus treated as a per se violation. *See Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001) (Sotomayor, J.) (If the plaintiff can allege that the conspirators "actually formed an agreement to fix . . . salaries, [the] per se rule would likely apply"); *see also Fleischman v. Albany Med. Ctr.*, 728 F. Supp. 2d 130, 157–58 (N.D.N.Y. 2010) (denying summary judgment on per se claim as effort to fix wages constituted a conspiracy that was illegal per se); *Doe v. Az. Hosp. & Healthcare Ass'n*, No. CV 07-1292, 2009 WL 1423378, at *3 (D. Ariz. Mar. 19, 2009) (allegation that hospitals conspired to keep wages below free market levels sufficient to support claim of per se illegality).

**a. The Complaint alleges that Jiffy Lube's no-hire restraint is horizontal in nature and operates to suppress wages.**

Jiffy Lube's motion is based on an overly formalistic argument that placing the no-hire provision in its standard franchise agreement automatically makes it a "vertical" restraint because Jiffy Lube and its franchises are at different market structural levels. But to determine whether an agreement is horizontal or vertical, it is the *nature of the restraint* that a court must evaluate, not the identity of the party who originates it. *Butler*, 331 F.Supp.3d at 795 (Plaintiffs alleged plausible antitrust violation that Jimmy Johns orchestrated agreement with horizontal effects); *Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2018 WL 3105955, at *6 (N.D. Ill. June 25, 2018) (no-hire agreement has vertical elements but is also a horizontal restraint); *see also Cernuto, Inc. v. United Cabinet Corp.*, 595 F.2d 164, 168 (3d. Cir. 1982) ("[A]lthough the [restraint] in such a situation is, itself, a vertical restraint, the desired impact is horizontal . . ."). Jiffy Lube's motion ignores that a horizontal conspiracy can exist even when it is implemented through a vertical arrangement. Likewise, "a departure from the rule-of-reason standard must be

based upon demonstrable economic *effect* rather than . . . upon formalistic line drawing." *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 887, (2007) (emphasis added). Numerous courts agree. *See e.g., Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435 n.3 (6th Cir. 2008) (horizontal aspects of hub-and-spoke conspiracy analyzed under per se rule); *In re Musical Instr. & Equip. Antitrust Litig.*, 798 F.3d 1186, 1192 & n.3 (9th Cir. 2015) (same); *Toys "R" Us, Inc. v. F.T.C.*, 221 F.3d 928, 936 (7th Cir. 2000) (vertical agreements used to orchestrate horizontal restraint among suppliers is a horizontal agreement); *United States v. Apple, Inc.*, 791 F.3d 290, 297, 323 (2d Cir. 2015) (horizontal agreement among publishers).

Here, the Complaint alleges that the purpose and effects of Jiffy Lube's no-hire provision are decidedly horizontal. *First*, there is no question that Jiffy Lube franchisees are horizontally-aligned competitors of each other. Doc. 1 ¶¶ 30-31 and 52. *Second*, Plaintiff, a former employee of a Jiffy Lube *franchisee*, seeks to represent a class of current and former *franchisee* employees. He alleges that Jiffy Lube orchestrated the no-hire agreement among franchisees (e.g., *Id.* ¶ 42), who agreed not to hire each other's employees." *Id.* ¶¶ 8, 31, 40 and 43 (alleging no-hire agreement between and among *franchisees*). *Finally*, Jiffy Lube and each franchisee – all sophisticated entities – admit to executing a contract agreeing that *franchisees* will not hire each other's employees.

With respect to competition among franchisees, Plaintiff alleges that the franchisees knew about one another and their shared commitment to abide by the no-poach provisions. *Id.* ¶ 34. Plaintiff also alleges the restraint would "not be in the independent interest of Jiffy Lube shop owners if they were acting unilaterally" because it is "in the independent interest of Jiffy Lube and each Jiffy Lube franchisee to compete for the most conscientious, talented and

experienced employees." *Id.* ¶ 35.  These factors support the existence of a horizontal

agreement.  Finally, even if the franchisees could not directly enforce the provision against one

another, Jiffy Lube represented it would enforce the rule on their behalf.  Doc. 11-3 at ¶ 15.4

(permitting injunctive relief for violation of no-poach agreement).

   The courts in *Deslandes* and *Butler* recently analyzed substantially identical no-hire

agreements imposed by McDonalds and Jimmy Johns and soundly rejected the argument that

they are purely vertical restraints automatically subject to rule of reason analysis.  The plaintiff in

*Deslandes* was a McDonald's employee whose experience was strikingly similar to the one

Fuentes had with Jiffy Lube.  She began in an entry-level position and worked her way up into

management, but when she wanted to move to a competing franchise, she was prevented from

doing so by a no-hire agreement with a six-month tail.  *Deslandes*, 2018 WL 3105955 at *1.

When McDonald's made the same arguments that Jiffy Lube makes here, the court held that "the

restraint has vertical elements, but the agreement is also a horizontal restraint.  It restrains

competition for employees among horizontal competitors . . ."  *Id*. at *6. Thus, the court denied

the motion to dismiss, rejected rule of reason analysis, and, as discussed below, found that the

plaintiff stated a claim for a restraint that might be unlawful under quick-look analysis.  *Id.* at *8.

   In *Butler*, the plaintiff worked at a Jimmy John's franchise where he became unsatisfied

with the low number of hours he was being scheduled to work.  *Butler,* 331 F.Supp.3d at 790-91.

When he tried to transfer to a competing store, a no-hire agreement prevented him from doing so,

and he was eventually forced to quit.  *Id.*  There, the court found a horizontal agreement and

allowed the plaintiff's Sherman Act claim to proceed because "the franchisees tacitly agree

amongst each other to enforce the no-hire provision through austere enforcement of the

employee non-compete contracts." *Id*. at 796.

*Deslandes* and *Butler* are well-reasoned precedent and their factual similarity to this case makes them strongly persuasive here.  And still more, numerous other courts have denied motions to dismiss in cases asserting per se Section 1 violations for wage-fixing or no-poach conspiracies.  *See, e.g.*, *High-Tech*, 856 F. Supp. 2d 1103 (allegation of nationwide conspiracy to eliminate competition for skilled labor pled a per se violation); *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1211–14 (N.D. Cal. 2015) (same); *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2018 WL 671239, at *11 (M.D.N.C. Feb. 1, 2018) (certifying class of faculty members asserting per se unlawful no-hire agreement between universities); *Beltran v. InterExchange, Inc.*, No. 14-cv-03074, 2016 WL 695967, at *4-*7 (D. Colo. Feb. 22, 2016) (wage fixing in au pair program), report adopted in relevant part by *Beltran*, 176 F. Supp. 3d 1066 (D. Colo. 2016).

In contrast to these directly analogous cases, Jiffy Lube discusses at length cases involving vertical agreements, like *Cont'l T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36 (1977) (vertical non-price restraints) and *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018) (vertical anti-steering).  In relation to the horizontal agreement at issue here, these cases are simply inapposite.

### b.  Recent DOJ Statements of Interest are less persuasive than earlier pronouncements that no-poach agreements are per se unlawful.

Joint guidance from the Department of Justice and Federal Trade Commission makes clear that the agencies charged with enforcing the antitrust laws consider "no-poaching agreements among employers, whether entered directly or through a third-party intermediary, per se unlawful."  *See* ¶58 (citing DOJ/FTC Guidance).  This is because "[a] horizontal agreement not to hire competitors' employees is, in essence, a market division." *Deslandes*, 2018 WL 3105955, at *6. (N.D. Ill. June 25, 2018); *see also DOJ Comp. Impact Statement in United States*

11

*v. Knorr-Bremse AG*, No. 1:18-cv-00747 (D.D.C.) [ECF No. 3], at 8, 12 (no-poach agreements are "per se unlawful market allocation agreements under Section 1 of the Sherman Act").

Jiffy Lube's reliance on recent statements of interest from the DOJ in other no-poach cases is misplaced.  Doc. 11-1 at 9.  The DOJ statements are enforcement guidelines similar to the Horizontal Merger Guidelines, jointly issued by the DOJ and the FTC, which share responsibility for evaluating certain proposed mergers for potential antitrust violations.  The Horizontal Merger Guidelines are not binding on federal courts.  *See FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 38 (D.D.C. 2015); *United States v. H & R Block, Inc.*, 833 F. Supp. 2d 36, 52 n.10 (D.D.C. 2011).

In *Christensen  v. Harris Cty.*, 529 U.S. 576 (2000),  the  Supreme  Court  analyzed the deference due to  agency  enforcement guidelines and opinion letters, as opposed to regulations promulgated through notice and comment rulemaking and entitled to *Chevron* deference.  The Court concluded that because an enforcement guideline was "contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking," it lacked the force of law and did not warrant *Chevron* deference.  *Id.* at 587.  "Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L.Ed. 124 (1944), *but only to the extent that those interpretations have the 'power to persuade,' Id.* (emphasis added).

Under *Skidmore*, the degree of deference due an opinion or judgment "in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140.  The DOJ statements are inconsistent with earlier pronouncements, and unlike the approach of the Washington Attorney General, who

investigated the no-poach agreements of Jiffy Lube and many similarly situated franchisors, and filed a lawsuit against Jersey Mike's,[1] the DOJ statements are not well-reasoned, or well-grounded in economics; nor are they thorough, or based on any investigation into the facts of this case.  Accordingly, their views should not be given significant deference.

Contrary to the DOJ statements, Plaintiff complains of a horizontal agreement among franchisees.  But even under the position set out in the DOJ statements, whether the rule of reason applies turns on another question of fact: whether Jiffy Lube's no-poach restraint was "reasonably necessary" to a legitimate collaboration.  "To be reasonably necessary, the restraint must not only promote the legitimate objective but must also do so significantly better than the available less restrictive alternatives." Areeda & Hovenkamp, Antitrust Law ¶ 1505 (4th ed.). Plaintiff plausibly pleads that the no-poach agreement will not survive this test.  Complaint ¶¶ 35-36 and 40.

### 3.   At Most, Plaintiff's Claim is Subject to the Quick-Look Rule

Even if the facts developed in discovery persuade the Court that the per se rule is inapplicable, quick-look analysis would apply.  Courts invoke quick-look in situations when the anticompetitive effects of the challenged restraint are so obvious that "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets."  *California Dental Ass'n v. F.T.C.*, 526 U.S. 756, 770 (1999).  This was precisely the result in *Deslandes*, where the court found that McDonald's no-hire agreement warranted quick-look review, holding that "[e]ven a person with a rudimentary understanding of economics would understand that if competitors

---

[1] Earlier this year, a Washington state court denied a motion to dismiss a complaint alleging a *per se* violation based on a substantially identical no-poach agreement in *Washington v. Jersey Mike's Franchise Systems, Inc.*, No. 18-2-25822-7 SEA (Jan. 25, 2019).

agree not to hire each other's employees, wages for employees will stagnate."  2018 WL 3105 ¶55 at *7.  This same economic common-sense logic applies to Jiffy Lube's no-hire agreement.

Courts use quick-look where, as here, "no elaborate industry analysis is required to demonstrate the anticompetitive character of . . . an agreement." *Bd. of Regents*, 468 U.S. at 109. With respect to no-hire agreements, the leading antitrust treatise recognizes that "[e]mployer conspiracies controlling employment terms . . . tamper with the employment market and thereby impair the opportunities of those who sell their services there." Phillip Areeda & Herbert Hovenkamp, Antitrust Law ¶ 377a, at ¶ 377c (rev. ed. 1995) (footnotes omitted).  Jiffy Lube's no-poach agreement was just such a conspiracy, and Plaintiff's allegations suffice to state a claim under the quick-look standard.

Finally, because quick-look shifts "to a defendant the burden to show *empirical evidence* of procompetitive effects," *California Dental*, 526 U.S. at 775 n.12 (emphasis added), Jiffy Lube cannot prevail on a motion to dismiss.  *See Butler*, 331 F. Supp. 3d at 797 (denying motion to dismiss even in absence of relevant market allegations).

### 4.  Jiffy Lube Cannot Prevail on This Motion by Arguing That Its Restraint is "Ancillary" to a Franchise Relationship

To avoid per se or quick-look treatment, then, Jiffy Lube's only hope is the narrow exception for restraints which are ancillary to a pro-competitive venture, such as the sale of a business.  But Jiffy Lube fails to show that the Complaint alleges that the no-poach agreement "is an essential or reasonably necessary component of [its franchise] agreements." *In re Ins. Brokerage Antitrust Litig*., 618 F.3d 300, 346 (3d Cir. 2010); *see also  Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 339 (2d Cir. 2008) ("[A] restraint that is unnecessary to achieve a joint venture's efficiency-enhancing benefits may not be justified based on those benefits.").

14

*Eichorn v. AT&T Corp.*, 248 F.3d 131 (3d Cir. 2001), upon which Jiffy Lube relies heavily, involved a challenge to AT&T's agreement not to hire for a period of time certain of its own former employees (those who earned more than $50,000 per year) from the company to which it was selling a portion of its business.  The Third Circuit applied a rule of reason analysis but limited its holding to no-hire agreements "entered upon the legitimate sale of a business to a third party." 248 F.3d at 144; *see also id.* at 144 n.2 ("we find no cases in which a no-hire agreement entered into upon the sale of a business to a third party . . . was found to be a horizontal price fixing conspiracy").  With this limitation, it is no surprise that the *Eichorn* court found no cases applying the per se rule "in similar factual circumstances." *Id.* at 143.  In contrast to the provision in *Eichorn,* the Jiffy Lube no-hire agreement is untethered to the sale of a business to a third party and cannot fairly be described as a limited covenant not to compete.

Jiffy Lube fails to demonstrate that the no-poach agreement is ancillary to a pro-competitive venture, nor can it.  This case concerns Jiffy Lube service centers' competition for employees, and the no-hire agreement has no pro-competitive purposes in that arena.  To the contrary, "[a] way to promote . . . competition for employees would be an advertising campaign extolling the virtues of working for [Jiffy Lube]." *Deslandes*, 2018 WL 3105955, at *8.

Nor are the no-poach provisions a "'core activity' of the [franchise] venture," *Med. Ctr. at Elizabeth Place LLC v. Premier Health Partners*, 2017 WL 3433131, at *13 (S.D. Ohio Aug. 9, 2017), as Jiffy Lube and franchisees explicitly disclaim collaboration or system-wide coordination on employee hiring.  ¶¶ 31 and 41.  *See Polygram Holding, Inc. v. F.T.C.*, 416 F.3d 29, 37 (D.C. Cir. 2005) (agreement between joint venturers to restrain competition on products outside the joint venture "looks suspiciously like a naked price fixing agreement between competitors, which would ordinarily be condemned as per se unlawful").

When a restraint is per se unlawful, any purported procompetitive benefits are irrelevant. *Leegin*, 551 U.S. at 886 ("The per se rule . . . eliminates the need to study the reasonableness of an individual restraint in light of the real market forces at work. . . ."). The contention that the per se rule is inapplicable "because [the] agreements are alleged to have procompetitive justifications . . . indicates a misunderstanding of the per se concept." *Arizona v. Maricopa Cty. Med. Soc'y*, 457 U.S. at 332, 351 (1982); *see also United States v. Topco Assocs., Inc.*, 405 U.S. 596, 609-10 (1972). Nor does the Complaint suggest a procompetitive benefit. Plaintiff alleges that the reason why franchisees agree not to hire each other's employees is precisely for a collective *anticompetitive* effect: the agreement is not in a franchisee's unilateral economic interest (hiring the best employee candidates), but it is in the *joint* interest of would-be competitors acting in concert to depress labor costs. ¶¶ 35-36.

Even if the no-poach provision were ancillary to an otherwise pro-competitive venture, Jiffy Lube has not attempted to argue that suppression of competition over labor is reasonably necessary to the success of its franchise. Its recent abandonment of the no-hire provision suggests otherwise. *Deslandes*, 2018 WL 3105955, at *7 (McDonald's abandonment of provision "suggests that the no-hire provision was not necessary to encourage franchisees to sign."). In any event, whether the restraint was reasonably necessary is a question of fact not ripe to decide on a motion to dismiss.

### B. Plaintiff Has Standing to Pursue Injunctive Relief

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). Under the

16

mootness doctrine, however, a case becomes nonjusticiable "only when it is impossible for a

court to grant any effectual relief whatever to the prevailing party." *Campbell-Ewald Co. v.

Gomez*, 136 S. Ct. 663, 669 (2016) (quoting *Knox v. Serv. Employees Int'l Union, Local 1000*,

567 U.S. 298, 306 (2012)). Thus, when a litigant argues that subsequent acts have rendered a

request for injunctive relief moot, "the question is not whether the precise relief sought at the

time the application for an injunction was filed is still available.  The question is whether there

can be *any* effective relief." *Oregon Nat. Res. Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d

818, 820 (9th Cir. 2006) (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th

Cir. 1988)).

Here, Jiffy Lube argues that it is unlikely to reinstitute its no-poach policy, and so

Fuentes does not have standing to enjoin conduct that Jiffy Lube has purportedly ceased.  But "a

defendant claiming that its voluntary compliance moots a case bears the formidable burden of

showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be

expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,

528 U.S. 167, 190 (2000). Here, Jiffy Lube has done nothing to carry its burden to show that it

"could not reasonably be expected" to resume its no-poach arrangement.  *See id*.  In fact, its

position is completely unsupported by any evidence, including any declaration.

Jiffy Lube's reference to an Assurance of Discontinuance does not establish that this

behavior is not reasonably expected to recur.  For one, Jiffy Lube's voluntary agreement with the

Washington AG does not extend to all franchises.  Only 108 Jiffy Lube service centers in

Washington are required to sign amendments to their franchise agreements removing the no-

poach provision.  *Id*. at ¶¶ 2.1 and 3.2.  The remaining 95% of Jiffy Lube franchises only

received a letter notifying them of the Assurance of Discontinuance.  *Id*. at ¶ 3.1.3.  For another,

the Assurance of Discontinuance that Jiffy Lube signed made no provision for notifying current employees that they now have a right to move freely among Jiffy Lube service centers – a right they may not know they had been denied.  Doc. 11-4.  As such, Jiffy Lube has not satisfied its "formidable burden" of demonstrating that this anticompetitive conduct won't recur.  *Friends of the Earth*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Assn*., 393 U.S. 199, 203 (1968)).

Fuentes is an appropriate plaintiff to seek injunctive relief.  Although he has not worked at a Jiffy Lube shop for six months and does not explicitly allege that he intends to work there again, his main issue with working there was the no-poach agreement.  Further, unlike in *McNair v. Synapse Group, Inc.*, 672 F.3d 213 (3d Cir. 2012), the Complaint here shows that Fuentes has left and returned to Jiffy Lube in the past making it plausible that he would return to work at Jiffy Lube in the future.  Doc. 1 ¶¶ 61-68.  He should thus be allowed to seek an injunction (among other things) barring Jiffy Lube from engaging in this unlawful conduct, thus removing the possibility that he will be harmed in any future employment at Jiffy Lube.  If it is necessary for Fuentes to explicitly state that he would reapply for work at Jiffy Lube absent this no-poach agreement, he should be granted leave to amend.

## C.    Plaintiff Has Properly Alleged Fraudulent Concealment

While Jiffy Lube argues that Plaintiff's claim is subject to a four-year statute of limitations the Complaint pleads with specificity the required elements of fraudulent concealment allowing Plaintiffs and the class to pursue damages from 2010 forward: "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) . . . the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts."

*Cunningham v. M&T Bank Corp.*, 814 F.3d 156, 161 (3d Cir. 2016). Thus, Plaintiff's claims should extend as far back as 2010.

The Complaint alleges that Jiffy Lube made false public representations which concealed the existence of the no-poach agreement. Doc. 1 ¶ 25 (Jiffy Lube website tells prospective employees that employment with Jiffy Lube is "[m]ore than just a job, but a step toward a career that lets you instantly see the results of your hard work" and "Jiffy Lube provides employees with a safe and enriching work environment" and that they'll "be working with one of the most reputable companies in the business, one with a stake in your success because it enhances our customers' trust in Jiffy Lube."). These misleading statements satisfy the wrongful concealment element at the pleading stage. Moreover, "a self-concealing conspiracy may satisfy the wrongful concealment element of the fraudulent concealment doctrine and because plaintiff has raised a genuine issue of fact as to the existence of the conspiracy, which if established would be a type likely to be self-concealing, defendants' motion to dismiss on this issue must be denied." *Bethlehem Steel Corp. v. Fishbach and Moore, Inc*., 641 F.Supp. 271, 275 (E.D. Pa. 1986).

Plaintiff also pleads diligence in view of the concealment. Plaintiff was neither a party to the franchise agreement, nor was that agreement provided to Jiffy Lube employees. Doc. 1 ¶¶ 82-90. Jiffy Lube contends that its franchise agreement is publicly available, Doc. 11-1 at ¶ 20-21, but an employee should not be held to understanding sophisticated franchising issues, and would have no way of knowing precisely what document his/her franchisee-employer had signed anyway. *See* Doc. 1 ¶ 88 (historic forms would never be available to franchisee employees). Nor should employees be held to the standard of obtaining such documents in order to understand employment issues that Jiffy Lube publicly contends it avoids. *See In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-md-2343, 2013 WL 2181185, at *32 (E.D. Tenn. May

19

20, 2013) (plaintiffs exercised due diligence where "some of [the defendants'] acts were not entirely public").  Jiffy Lube's contention that Fuentes should have found his way to the Minnesota Department of Commerce website to find a provision he didn't know about in a franchise agreement he wasn't party to suggests a far greater burden of investigation than the law requires.

Jiffy Lube also is not prejudiced because the scope of the putative class has not been determined and discovery will reveal the appropriate timeframe for the class definition.

## LEAVE TO AMEND

If the Court judges any aspect of Plaintiff's Complaint deficient, Plaintiff respectfully requests leave to amend.   *Foman v. Davis*, 371 U.S. 178 (1962).

## CONCLUSION

For all the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in its entirety.


Dated: May 6, 2019                          Respectfully submitted,


                                            */s/ Joshua J. Bloomfield*
                                            Joshua J. Bloomfield
                                            *(admitted pro hac vice)*
                                            jjb@classlawgroup.com
                                            Michael L. Schrag
                                            *(pro hac vice pending)*
                                            mls@classlawgroup.com
                                            George W. Sampson, Of Counsel
                                            *(admitted pro hac vice)*
                                            gws@classlawgroup.com
                                            GIBBS LAW GROUP LLP
                                            505 14th Street, Suite 1110
                                            Oakland, California 94612
                                            Telephone: (510) 350-9700
                                            Facsimile: (510) 350-9701

*/s/ Kevin Clancy Boylan*
Kevin Clancy Boylan
cboylan@forthepeople.com
Pennsylvania Bar No. 314117
MORGAN & MORGAN
1600 John F. Kennedy Blvd..
Suite 900
Telephone: (215) 446-9795

*/s/ John A. Yanchunis*
John A. Yanchunis
jyanchunis@forthepeople.com
Florida Bar No. 324681
Marcio W. Valladares
mvalladares@forthepeople.com
Florida Bar No. 0986917
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
201 North Franklin Street, Seventh Floor
Tampa, Florida 33602
Telephone: (813) 223-5505


*Attorneys for Plaintiff Victor Fuentes and the
Proposed Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 6, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF.


*/s/  Joshua J. Bloomfield*