## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VICTOR FUENTES, individually and on behalf of all others similarly situated,** | |
| *PLAINTIFF*, | |
| *V.* | CIVIL ACTION NO. 2:18-CV-05174-AB |
| **JIFFY LUBE INTERNATIONAL, INC.,** | |
| *DEFENDANT.* | |

## PLAINTIFF'S BRIEF IN SUPPORT OF UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND FOR CERTIFICATION OF THE PROPOSED <u>SETTLEMENT CLASS</u>

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ......................................................................................... 1

II.  BACKGROUND ........................................................................................... 3

   A.   Factual Background and Procedural History ........................................... 3

   B.   Plaintiff's Antitrust Claims ..................................................................... 5

III. THE PROPOSED SETTLEMENT ............................................................... 7

   A.   Notice Plan ............................................................................................. 8

   B.   Release .................................................................................................... 9

   C.   Attorney's Fees and Costs, Expenses, Service Award, and Administration
        Expenses ............................................................................................... 10

   D.   Proposed Settlement Administrator....................................................... 10

   E.   Net Settlement Fund .............................................................................. 11

IV.  THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR,
     REASONABLE, AND ADEQUATE .......................................................... 13

   A.   Standard for Preliminary Approval ....................................................... 13

   B.   The Settlement Satisfies Rule 23(e)(2) ................................................. 15

      1.   The Settlement Was Negotiated at Arm's Length ............................. 15

      2.   The Relief Provided Is Adequate, Taking Into Account the Rule 23(e)(2)(C)
           Factors........................................................................................... 16

      3.   The Settlement Treats Class Members Equitably ............................. 17

      4.   Class Representative and Counsel Are Adequate ............................. 17

   C.   The Settlement Satisfies the *Girsh* Factors for Fairness, Reasonableness, and
        Adequacy ............................................................................................... 18

      1.   The Complexity, Expense, and Likely Duration of the Litigation ...... 18

      2.   The Reaction of the Class to the Settlement ..................................... 19

      3.   The Stage of the Proceedings and the Amount of the Discovery Completed ..... 19

      4.   The Risks of Establishing Liability and Damages............................. 19

      5.   The Risks of Maintaining the Class Action Through Trial ................ 21

      6.   The Ability of the Defendants to Withstand a Greater Judgment....... 21

      7.   The Range of Reasonableness of the Settlement Fund in Light of the Best
           Possible Recovery and All the Attendant Risks of Litigation ............ 21

V.      THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS
        FOR CLASS CERTIFICATION AT THE SETTLEMENT STAGE ..................... 22

   A.   Rule 23(a)'s Requirements Are Satisfied ................................................. 23

      1.   Numerosity ......................................................................................... 23

      2.   Commonality ...................................................................................... 23

      3.   Typicality ........................................................................................... 24

      4.   Adequacy of Representation ............................................................. 25

   B.   Rule 23(b)(3) is Satisfied ........................................................................ 26

      1.   Common Issues Predominate ........................................................... 26

      2.   A Class Action Is the Superior Method for Resolving These Claims ................. 27

VI.     THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE
        PROCESS ..................................................................................................... 28

VII.    PROPOSED SCHEDULE OF EVENTS ...................................................... 29

VIII.   CONCLUSION .............................................................................................. 30

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                            Page(s)

*Am. Needle, Inc., v. Nat'l Football League*,
    560 U.S. 183 (2010) ........................................................................................... 5

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................... 22, 26

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013) ........................................................................................ 26

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ............................................................................... 24

*Burtch v. Milberg Factors, Inc.*,
    662 F.3d 212 (3d Cir. 2011) ............................................................................. 5

*Conrad v. Jimmy John's Franchise, LLC*,
    No. 18-CV-00133-NJR, 2021 WL 3268339 (S.D. Ill. July 30, 2021) ..................... 6, 20

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984) .......................................................................................... 5

*Deslandes v. McDonald's USA, LLC*,
    No. 17 C 4857, 2021 WL 3187668 (N.D. Ill. July 28, 2021) ............................... 6, 7, 20

*Eichenholtz v. Brennan*,
    52 F.3d 478 (3d Cir. 1995) ............................................................................. 13

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ........................................................................... 15

*In re Aetna Sec. Litig.*,
    No. MDL 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ............................................ 22

*In re Auto. Refinishing Paint Antitrust Litig.*,
    MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ..................................... 15

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .................................................................... 15, 20

*In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*,
   795 F.3d 380 (3d Cir. 2015) ............................................................... 24

*In re Corel Corp. Inc. Sec. Litig.*,
   293 F. Supp. 2d 484 (E.D. Pa. 2003) .................................................. 22

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ..................................................... 13, 18, 19

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................ 20, 21

*In re Linerboard Antitrust Litig.*,
   504 F. Supp. 2d 38 (E.D. Pa. 2007) ..................................................... 2

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   301 F.R.D. 191 (E.D. Pa. July 7, 2014) ......................................... 14, 23

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   775 F.3d 570 (3d Cir. 2014) ................................................................ 13

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   821 F.3d 410 (3d. Cir. 2016) ......................................................... 16, 28

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ............................................................ 9, 21

*In re Viropharma Inc., Sec. Litig.*,
   No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan 25, 2016).............. 16, 18, 19

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ....................................................... 15, 20, 23

*Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd. Co.*,
   838 F.3d 421 (3d Cir. 2016) ................................................................. 5

*Nat'l Collegiate Athletic Ass'n v. Alston*,
   141 S. Ct. 2141, 210 L. Ed. 2d 314 (2021) ........................................... 6

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ............................................................... 25

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999) ........................................................................................ 22

*Pennwalt Corp. v. Plough*,
   676 F.2d 77 (3d Cir. 1982) ............................................................................. 13

*Robinson v. Jackson Hewitt, Inc.*,
   No. 19-9066 (SDW) (LDW), 2019 WL 5617512 (D.N.J. Oct. 31, 2019) ...................... 6

*Stevens v. SEI Invs. Co.*,
   No. CV 18-4205, 2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ................................ 13, 25

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) ............................................................................ 26

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
   No. 2:06-CV-1833, 2020 WL 1922902 (E.D. PA. Apr. 21, 2020) ................... 13, 23, 26

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................ 24

*Whiteley v. Zynerba Pharms., Inc.*,
   No. 19-4959, 2021 WL 4206696 (E.D. Pa Sept. 16, 2021) ........................................ 27

Statutes

15 U.S.C. § 1 ................................................................................................ 4, 5, 24

## I.   **INTRODUCTION**

Plaintiff Victor Fuentes ("Plaintiff")[1], on behalf of himself and others similarly situated, and Defendant Jiffy Lube International, Inc. ("Jiffy Lube") have reached a settlement in this matter (the "Settlement").[2] This Settlement was reached after extensive arm's-length and hard-fought negotiations and formal settlement conferences facilitated by the Hon. David R. Strawbridge. The Settlement was reached by counsel experienced in antitrust class actions who understand the risks of proceeding through class certification, trial, and appeal.

Because rulings in analogous no-poach cases significantly increased the risks that Plaintiff would not be able to certify a nationwide class or prevail on the merits, the Settlement Class is narrower than the one pled. The Settlement Class is defined as:

> All persons in the United States who between December 1, 2014 and December 31, 2018 (i) worked as hourly employees; (ii) of a Jiffy Lube Franchisee located in the Philadelphia-Camden-Wilmington MSA; and (iii) worked for a period of at least 90 days.[3]

---

[1] The other plaintiff in this action, Cayla Young, is not a member of the Settlement Class. She reached an individual settlement and dismissed her claims.

[2] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement ("Settlement" or "Agreement"), attached as the Declaration of Michael Schrag ("Schrag Decl."), Exhibit 1.

[3] Excluded from the Settlement Class are: (a) Jiffy Lube and its principals, affiliated entities, legal representatives, successors, and assigns; (b) any Person who files a valid, timely Request for Exclusion; (c) federal, state, and local governments (including all agencies and subdivisions thereof); and (d) any Person who settled and released claims at issue in this Action.

It includes approximately 1,250 hourly-paid Jiffy Lube franchisee employees in the Philadelphia-Camden-Wilmington region.[4] The proposed Settlement would establish a two-million-dollar ($2,000,000) all cash Settlement Fund with no reversion and no claims process. The $2 million gross settlement amount represents approximately 90% of the damages Plaintiff's expert preliminarily calculated for the Settlement Class. This represents an excellent recovery considering the size of the Settlement Class, the nature of Plaintiff's claim, potentially recoverable damages, Defendant's potential defenses, and the risks and time required to prosecute this litigation through class certification, trial, and any potential appeals. Class Counsel believes that the Settlement is in the best interests of the Settlement Class.

This Settlement is fair, reasonable, and adequate, and meets the applicable standards of approval under Federal Rule of Civil Procedure 23(e). The proposed Settlement Class satisfies the requirements of Rule 23(a) and (b), and the proposed notice and allocation plans are reasonable. Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) certify the proposed Settlement Class; (3) appoint Gibbs Law Group as Settlement Class Counsel; (4) appoint Plaintiff Victor Fuentes as representative of the Settlement Class; (5) approve the proposed Notice Plan and Notice;

---

[4] The list of the 32 Jiffy Lube franchisees located in the Philadelphia-Camden-Wilmington Metropolitan Statistical Area (MSA) is attached as Ex. C to the Settlement Agreement (Schrag Decl. Ex. 1). The rights of other Jiffy Lube franchisee employees are preserved as the Settlement does not release their claims and their individual statutes of limitations have been tolled during the pendency of this action. *In re Linerboard Antitrust Litig.*, 504 F. Supp. 2d 38, 45 (E.D. Pa. 2007).

(6) appoint the proposed Settlement Administrator; and (7) schedule the Final Approval Hearing and related dates as proposed.

## II.     BACKGROUND

### A. Factual Background and Procedural History

Jiffy Lube franchisees sell lubrication, oil change, and light repair services for cars and trucks to customers through independently owned and operated franchise shops. SAC at ¶ 14. Defendant Jiffy Lube licenses to franchisees the right to operate a business or distribute goods and services using the Jiffy Lube name and systems. *Id.* at ¶ 21.

In order to own a Jiffy Lube franchise, prospective franchisees must sign a franchise agreement, pay a franchise fee, and contribute a percentage of monthly gross sales as royalty payments to Jiffy Lube. *Id.* at ¶ 25.

Throughout the Class Period, Defendant incorporated a clause into its standard franchise agreement prohibiting Jiffy Lube franchisees from soliciting or hiring existing employees of Jiffy Lube shops (the "No-Poach Provision"). *Id.* at ¶ 26. Jiffy Lube had unilateral power to terminate their franchises if franchisees violated the No-Poach Provision. *Id.* at ¶ 27.

Plaintiff alleges that the No-Poach Provision had the desired effect of benefitting Jiffy Lube shop owners and Jiffy Lube at the expense of employees. *Id.* at ¶¶ 30-40. More specifically, Jiffy Lube's No-Poach Provision acted as a conspiracy among itself and franchisees to artificially suppress wages and decrease the pool of available, qualified shop employees. *Id.* at ¶ 35. By acting in concert during the Class Period, Plaintiff alleges that

franchisees were able to pay employees below-market wages without worrying that they would seek employment at another Jiffy Lube franchise with more attractive working conditions. *Id.* Plaintiff alleged the No-Poach Provision had an anticompetitive effect and violated § 1 of the Sherman Act. *Id.* at ¶¶ 91-102.

For over three years, Plaintiff has been diligently litigating this case. On November 29, 2018, Plaintiff filed his class action lawsuit against Jiffy Lube alleging that its No-Poach Provision violates Section 1 of the Sherman Act, 15 U.S.C. § 1.[5] Dkt. 1. On April 15, 2019, Jiffy Lube filed a Motion to Dismiss for Failure to State a Claim. Dkt. 11. On November 25, 2019, the Court denied Defendant's Motion to Dismiss insofar as it related to the allegations under § 1 of the Sherman Act. Dkt. 41. On May 4, 2020, Plaintiff filed a First Amended Class Action Complaint. Dkt. 53. Finally, concurrent with this motion, Plaintiff is filing a Second Amended Class Action Complaint to reflect the narrower Settlement Class that Plaintiff seeks to certify.

The Parties have engaged in rigorous discovery. Plaintiff served extensive discovery requests on Defendant and Jiffy Lube franchisees. Schrag Decl. at ¶ 8. Through first-party and third-party discovery, Plaintiff has collected tens of thousands of documents. *Id.* Moreover, Plaintiff has taken six depositions of Defendant and third parties. Therefore, the Parties possess adequate information concerning the strengths and weaknesses of Plaintiff's claims against Defendant. During discovery, the Parties' counsel engaged in informal settlement discussions, none of which were successful. *Id.* at ¶ 10. Beginning

---

[5] Plaintiff voluntarily dismissed other Defendants on April 10, 2019, and May 18, 2020. *See* Dkts. 8, 55, 59.

October 29, 2021, the Parties participated in several settlement conferences with the Hon. David R. Strawbridge, which took over two months to conclude. *Id.* Ultimately, those settlement discussions resulted in the Settlement now presented to this Court for approval.

### B. Plaintiff's Antitrust Claims

Section 1 of the Sherman Antitrust Act, 15 U.S.C., prohibits "every contract, combination., or conspiracy, in restraint of trade or commerce." *Mylan Pharm. Inc. v. Warner Chilcott Pub. Ltd. Co.,* 838 F.3d 421, 441 (3d Cir. 2016) (quoting 15 U.S.C. § 1). To make a § 1 claim, an antitrust plaintiff must plead: "(1) that the defendant was a party to a contract, combination or conspiracy and (2) that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade." *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011) (internal quotations omitted).

To determine whether economic entities such as franchisees are capable of forming a conspiracy under § 1 of the Sherman Act, "[t]he relevant inquiry . . . is whether there is a 'contract, combination . . . or conspiracy' amongst 'separate economic actors pursuing separate economic interests' such that the agreement 'deprives the marketplace of independent centers of decisionmaking . . ..'" *Am. Needle, Inc., v. Nat'l Football League,* 560 U.S. 183, 195 (2010) (quoting *Copperweld Corp. v. Indep. Tube Corp.,* 467 U.S. 752, 768 (1984)). In *Am. Needle, Inc.,* the Supreme Court held that National Football League teams were capable of conspiring under § 1 of the Sherman Act because the teams were "independently owned . . . competed with one another" for fans, gate receipts, managers, and players, and in making decisions did "not pursue the common interest of the whole league, but instead the interests of each corporation itself." 560 U.S. at 195, 200 (internal

5

quotations omitted). Subsequent court decisions have extended this reasoning to franchisees generally. *See, e.g., Robinson v. Jackson Hewitt, Inc.,* No. 19-9066 (SDW) (LDW), 2019 WL 5617512 (D.N.J. Oct. 31, 2019) (finding that defendant franchisees who, *inter alia,* compete with one another and who make independent recruiting, hiring, firing, and compensation decisions regarding employees, were "separate economic actors pursuing separate economic interests," and would "make their own market decisions regarding employment, but for their agreement to cooperate.").

However, in 2021, decisions in two similar no-poach antitrust cases brought by franchisee employees, relying on a recent Supreme Court decision, held that the rule of reason analysis applies to no-poach cases and denied nationwide class certification in each case. First, in a putative nationwide class action brought on behalf of McDonald's employees whose movement was restricted by a no-poach provision very similar to the one in Jiffy Lube's franchise agreements, the court held that under *Nat'l Collegiate Athletic Ass'n v. Alston*, 141 S. Ct. 2141, 210 L. Ed. 2d 314 (2021), the rule of reason test was appropriate, and that differences in conditions among various geographic employment markets precluded certification of a nationwide class. *Deslandes v. McDonald's USA, LLC,* No. 17 C 4857, 2021 WL 3187668, at *11 (N.D. Ill. July 28, 2021). In *Conrad v. Jimmy John's Franchise, LLC*, No. 18-CV-00133-NJR, 2021 WL 3268339, at *10 (S.D. Ill. July 30, 2021), the court, also relying on *Alston*, reached a similar conclusion in a putative nationwide class action brought by Jimmy John's employees, finding that the rule of reason test applied, and that a nationwide class could not be certified. The plaintiffs in *Jimmy John's* settled their claims individually, with no relief provided to any other employees.

Recently, in the *McDonald's* no-poach case, the court granted judgment on the pleadings in favor of McDonald's on the ground that the remaining individual Plaintiff could not establish market power under a rule of reason analysis. *Deslandes v. McDonald's USA*, LLC, No. 17 C 4857, 2022 WL 2316187, at *12 (N.D. Ill. June 28, 2022).

While Plaintiff disagrees with the holdings, in light of these cases, the Parties here reached a settlement on behalf of a class, limited geographically, to include only workers at Jiffy Lube franchise stores in the Philadelphia-Camden-Wilmington MSA. This proposed Settlement would provide significant relief for hundreds of workers harmed by Jiffy Lube's practices in this region.

The Parties came to an agreement on the Settlement Class which is narrower than the Nationwide Class as defined in the First Amended Class Action Complaint because the Philadelphia-Camden-Wilmington MSA is the relevant market where Plaintiff was directly impacted by the No-Poach Provision in the franchise agreement. Further, the Philadelphia-Camden-Wilmington MSA is a distinct submarket with 32 Jiffy Lube locations owned by four corporate franchisee entities that had a No-Poach Provision in their franchise agreement with Jiffy Lube.

### III.   THE PROPOSED SETTLEMENT

Pursuant to the Settlement Agreement, Plaintiff seeks certification of the following Settlement Class for settlement purposes only:

> All persons in the United States who between December 1,
> 2014 and December 31, 2018 (i) worked as hourly employees;
> (ii) of a Jiffy Lube Franchisee located in the Philadelphia-

Camden-Wilmington MSA; and (iii) worked for a period of at
least 90 days.

Schrag Decl. Ex. 1 at ¶ 1.33. The proposed Settlement establishes a non-reversionary
$2,000,000 Settlement Fund, which will exclusively be used to pay: (1) cash awards to
Settlement Class Members; (2) Settlement Administration Expenses; (3) attorney's fees
and out-of-pocket expenses, subject to Court approval; (4) any court-approved service
award to compensate the Class Representative; and (5) required Taxes earned by the
Settlement Fund as well as payroll taxes and tax withholding from the portion of the
Settlement deemed unpaid wages. *See* Section III.E. below.

Each Settlement Class Member shall be entitled to receive a *pro rata* amount of the
Net Settlement Fund (after attorney's fees and expenses, administration expenses, and any
service award amount is deducted) based on his or her estimated earnings during the Class
Period.  *See* Schrag Decl. Ex. 2.

**A.  Notice Plan**

Settlement Class Members can be identified based on the records provided by
Defendant. Class Counsel will provide the Settlement Administrator with the relevant data
obtained from Defendant, including the Settlement Class Members' last known mailing
addresses. Declaration of Carla Peak ("Peak Decl.") at ¶ 12.  Plaintiff proposes Notice will
be sent via U.S. mail to each Settlement Class Member. *Id*.  The Notice will also tell
Settlement Class Members the estimated amount they will receive from the Settlement
based on their estimated earnings at a Jiffy Lube Franchise during the class period. *Id*. The
Settlement Administrator will maintain a settlement website with relevant court documents

and contact information and also will operate a toll-free phone number to provide more information for the Settlement Class Members. *Id.* at ¶¶ 14-15.

Settlement Class Members will have an opportunity to verify and correct, if needed, the estimated earnings information used as a basis for each settlement payment using a unique access code on the settlement website. The unique access code will provide a safe, secure, efficient, and cost-effective way for the Settlement Class Members to review, correct, and/or provide relevant information for the claims administration, including their social security number through the website so that a W-9 form may be issued and a correct amount can be delivered to the most updated address or account. *Id.* at 17.

Settlement Class Members will have the opportunity to object to or exclude themselves from the Settlement. Schrag Decl., Ex. 1 at ¶ 10.4. The procedures and deadlines for filing requests for exclusion and objections will be clearly listed on the Notice and will inform Settlement Class Members that they will be bound by the release contained in the Settlement unless they timely exercise their opt-out right. *Id.*, Ex. 1 at Ex. B. This Notice satisfies the requirement under *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 527 (3d Cir. 1998) (notice must "afford [interested parties] an opportunity to present their objections.").

## B. Release

The release is appropriately tailored to this case and is limited to those Settlement Class Members identified in the Class based on information exchanged in discovery. *See* Schrag Decl. Ex. 1 at ¶¶ 1.26-29. In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement will release Defendant from any and

all claims that arise out of or relate to Jiffy Lube's implementation, use, and enforcement of its alleged restrictions on hiring in the 32 Jiffy Lube Franchise stores located in the Philadelphia-Camden-Wilmington MSA in connection with the No-Poach Provision. *Id*.

### C. Attorney's Fees and Costs, Expenses, Service Award, and Administration Expenses

If the Settlement receives preliminary approval, Class Counsel will apply to the Court for an award of attorney's fees of $500,000 or 25% of the Settlement Fund, as well as reimbursement of litigation expenses of no more than $320,465. Schrag Decl. Ex. 1 at ¶ 9.1. An award of attorney's fees and costs will compensate Class Counsel for the work already performed in relation to the Released Class Claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, and making sure the Settlement is fairly implemented so that as many Settlement Class Members as possible receive settlement benefits. Class Counsel will also request a Service Award of $5,000 for class representative Victor Fuentes to compensate him for agreeing to represent the class and working with Class Counsel to develop the factual allegations, provide documents and interrogatory responses in discovery, and communicate with Class Counsel throughout the settlement process.

### D. Proposed Settlement Administrator

After talking to and receiving bids from several class action settlement administrators, Class Counsel requests that the Court appoint Gilardi & Co. LLC ("Gilardi") as the Settlement Administrator. *See* Schrag Decl. at ¶11. Gilardi has ample experience in administering settlements, including in cases like this one where taxes will

10

be withheld on a portion of class members' settlement payments. *Id.* The cost of settlement administration will be approximately $68,132. While this was not the lowest bid, Class Counsel believes that that this fee is reasonable and that Gilardi's experience in similar cases requiring it to perform tax withholding and reporting tasks, makes it the most qualified administrator for this case.

### E.  Net Settlement Fund

The amount remaining in the Settlement Fund after paying attorney's fees and costs, the service award, and administration expenses is the Net Settlement Fund which will be allocated to Settlement Class Members. As described in detail in the Allocation Plan, Settlement Class Members' settlement amounts will be based on their estimated earnings at a Jiffy Lube shop during the Class Period. Schrag Decl. at ¶ 11, Ex. 2.

Settlement Class Members' Notices will include the earnings estimate used to calculate their settlement payments. Jiffy Lube produced data from which earnings can be estimated and Plaintiff may be able to obtain additional data pursuant to subpoenas issued to franchisees. Estimated earnings will be determined based on the best data available to Plaintiff and the Settlement Administrator at the time Notice is sent. The Settlement Administrator will populate each Settlement Class Member's Notice with the estimated earnings and mail the Notice to him or her via first class U.S. mail. *Id.*

Settlement Class Members will have an opportunity to contest the estimated earnings stated in their Notices. The Settlement Administrator will rule on these contests and its determination of the estimated earnings will be final. Once final determinations are

made as to the estimated earnings, the Settlement Administrator will calculate each Settlement Class Member's pro rata share of the Net Settlement Fund. *Id.*

One third of the settlement proceeds paid to Settlement Class Members will be treated as unpaid wages and the Settlement Administrator will withhold taxes on this amount. *Id.* The other 2/3 is the non-wage portion of the Settlement. Where the portion of a Settlement Class Member's award allocated to wages is $50 or less, a de minimis threshold will apply, and the entire award will be allocated as non-wage. Where the de minimis threshold is reached, the necessary taxes will be withheld on the wage portion of the Settlement and the wage deposit will be made pursuant to the law of the relevant work states of Delaware, Maryland, New Jersey, or Pennsylvania. Settlement Class Members will not have to file a claim to receive settlement benefits but will be asked to send the Settlement Administrator their social security numbers. Each Class Member will be provided with a Claims ID and PIN to safely and securely provide this information.

Undistributed class member funds (e.g., for Settlement Class Members who cannot be located after reasonable and customary efforts and/or do not cash their checks by the stale date) will be reallocated pro rata and sent in a second distribution to Settlement Class Members who deposited their settlement checks so long as such a distribution is economically sensible in light of the amount to be distributed and the costs of a second distribution. If the sum available for a second distribution is not sufficient to render such a distribution economically sensible, or if there remain amounts undistributed after the second distribution, the undistributed amount will be donated, cy pres, to an appropriate non-profit organization, not affiliated with any of the parties or their counsel, to be

approved by the Court. No Settlement funds will revert to Defendant. Schrag Decl. Ex. 1 ¶ 8.7.

## IV. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AS FAIR, REASONABLE, AND ADEQUATE

### A. Standard for Preliminary Approval

There is a strong presumption in favor of voluntary settlement agreements in this Circuit. *See, e.g., Pennwalt Corp. v. Plough,* 676 F.2d 77, 79-80 (3d Cir. 1982). Settlement is particularly favored in class actions and other complex cases "where judicial resources can be conserved by avoiding formal litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995); *see also Stevens v. SEI Invs. Co.,* No. CV 18-4205, 2020 WL 996418, at *2 (E.D. Pa. Feb. 28, 2020). However, a court must review any proposed settlement to ensure that it is "fair, reasonable, and adequate" before directing notice. Fed. R. Civ. P. 23(e); *see also Vista Healthplan, Inc. v. Cephalon, Inc.,* No. 2:06-CV-1833, 2020 WL 1922902, at *5 (E.D. PA. Apr. 21, 2020) (quoting *In re Nat'l Football League Players' Concussion Inj. Litig.,* 775 F.3d 570, 581 (3d Cir. 2014)). Courts are generally afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan,* 52 F.3d 478, 482 (3d Cir. 1995).

In assessing whether a settlement should receive preliminary approval, a court determines whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to

13

fall within the range of possible approval." *In re Nat'l Football League Players'*
*Concussion Inj. Litig.,* 301 F.R.D. 191, 197-98 (E.D. Pa. July 7, 2014). The parties must
demonstrate that the Court will likely be able to approve the proposed settlement and
certify the settlement class. Fed. R. Civ. P. 23(e).

Rule 23(e)(2) requires the Court to consider the following factors to determine whether the
proposed settlement is "fair, reasonable, and adequate:"

> (A) the class representatives and class counsel have adequately represented the
> class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the cost, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the
> > class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including
> > timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Furthermore, the Third Circuit advises courts to consider the final approval "*Girsh*
factors" in deciding whether to preliminarily approve a class action settlement, which
include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction
of the class to the settlement; (3) the stage of the proceedings and the amount of the
discovery completed; (4) the risks of establishing liability; (5) the risks of establishing
damages; (6) the risks of maintaining the class action through trial; (7) the ability of the
defendants to withstand a greater judgment; (8) the range of reasonableness of the
settlement fund in light of the best possible recovery; and (9) the range of reasonableness

of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh v. Jepson,* 521 F.2d 153, 156 (3d Cir. 1975).

Finally, a presumption of fairness applies when "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

### B.  The Settlement Satisfies Rule 23(e)(2)

The settlement proposed in this case satisfies all the foregoing Rule 23(e)(2) standards.

#### *1. The Settlement Was Negotiated at Arm's Length*

First, the Settlement was reached in arm's length negotiations by counsel experienced in settling class actions. *See In re Auto. Refinishing Paint Antitrust Litig.,* MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (preliminarily approving class action settlement that "was reached after extensive arms-length negotiation between very experienced and competent counsel."); *see also* Rule 23(e)(2)(B). Prior to the mediation, the parties engaged in extensive discovery, hired experts, took six depositions, issued subpoenas, and were preparing to brief critical legal issues, including class certification. Schrag Decl. at ¶ 8. Through this discovery and legal research, Plaintiff was able to assess the strengths of the case, and the propriety of settlement at this juncture. All parties' counsel are experienced in class actions and antitrust matters. Schrag Decl. at ¶¶ 2, 8.

15

Therefore, by the time the Settlement was reached, Plaintiff and Settlement Class Counsel had a clear understanding of the merits and weaknesses of their case. *See In re Nat'l Football League Players Concussion Inj. Litig.,* 821 F.3d 410, 436-37 (3d. Cir. 2016) (finding that, even though discovery was incomplete, class counsel were in a position to assess the value of class claims and negotiate a fair settlement). In sum, Plaintiff and his counsel are in a strong position to make an informed decision on the merits of recommending the settlement. *See In re Viropharma Inc., Sec. Litig.,* No. 12-2714, 2016 WL 312108, at *11 (E.D. Pa. Jan 25, 2016) (finding that the Court "affords considerable weight to the views of experienced counsel regarding the merits of the settlement."). This strongly supports approval of the Settlement.

Moreover, the negotiations that led to the Settlement were conducted before a Magistrate Judge who has extensive experience in resolving complex litigation and who ensured the negotiations were conducted at arm's length. "The participation of an independent mediator in settlement negotiations virtually insures [sic] that the negotiations were conducted at arm's length and without collusion between the parties." *Viropharma*, 2016 WL 312108, at *11.

### 2. The Relief Provided Is Adequate, Taking Into Account the Rule 23(e)(2)(C) Factors.

Further, the relief provided to the class in this Settlement is adequate. *See* Rule 23(e)(2)(C). Defendant will pay $2 million in the Settlement. Based on the Settlement Class data provided by Defendant, the Settlement Class size is approximately 1,250 persons. Based on Plaintiff's economist expert's analysis, the Settlement amount is approximately

16

90% of the Class's damages. The Settlement amount is also reasonable in light of the costs of continuing litigation. For example, the class certification and merits expert reports would be expensive in this case.

In addition to the financial component of this Settlement, Jiffy Lube has ceased its use of the No-Poach Provision and has no plans to reinstate the policy at a later date. Plaintiff also proposes an effective method of distributing relief, *see* infra at III, and a reasonable award of attorneys' fees. *See* infra at III.C. Plaintiff has not entered into any agreements that are required to be disclosed by Rule 23(e)(3). *See* Rule 23(e)(2)(C)(iv).

### 3. The Settlement Treats Class Members Equitably

Finally, the Settlement treats Settlement Class Members equitably relative to each other. Funds will be awarded to class members on a pro rata basis, taking into account their estimated earnings at a Jiffy Lube franchisee during the Settlement Class Period. The Parties have designed a simple process to maximize the number of Settlement Class Members who receive and accept compensation for their claims. This supports settlement approval.

### 4. Class Representative and Counsel Are Adequate

Here, the proposed Class Representative has diligently represented the Settlement Class. He has actively participated in discovery and has worked with counsel to attempt to locate relevant documents. Throughout, he has stayed in contact with Class Counsel and acted with the interests of the Class in mind. Schrag Decl. at ¶ 19.

Class Counsel have also adequately represented the Class. They vigorously prosecuted this case, including briefing two motions to dismiss. They also conducted robust

discovery and were preparing for expert reports. Class Counsel have developed strong liability evidence. As part of these efforts, Class Counsel worked over 3,267 hours on the case and has advanced more than $320,465 in litigation expenses on behalf of the Class, with no assurance that those expenses would be reimbursed. Schrag Decl. at ¶ 17.

Considering all these guideposts, the Court should preliminarily conclude that the proposed Settlement is fair, reasonable, and adequate, and likely to receive final approval.

### C. The Settlement Satisfies the *Girsh* Factors for Fairness, Reasonableness, and Adequacy

#### 1. The Complexity, Expense, and Likely Duration of the Litigation

The first *Girsh* factor is intended to capture "the probable costs, in both time and money, of continued litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d at 812 (internal citations omitted). This action is a complex and expensive antitrust case, which will likely continue for a substantial amount of time absent settlement. This case was filed more than three years ago and while pleadings, motions and much of the fact discovery have been completed, absent settlement, the parties would have to continue to engage in significant and expensive litigation for several months or years. Class Counsel has invested hundreds of hours into this case. Schrag Decl. at ¶ 17. If this case were to continue, through motions for class certification, summary judgment, trial, and appeals, that number would continue to grow. *See Viropharma*, 2016 WL 312108, at *10 (finding that continuing litigation would involve substantially more motion practice, including motions to dismiss and for class certification, each of which would likely require oral argument, extensive briefing, potential *Daubert* challenges and "battles between

18

competing reports.") Thus, this factor weighs in favor of approval.

### 2. *The Reaction of the Class to the Settlement*

Plaintiff Fuentes supports the Settlement. The reaction of other class members to the settlement will be addressed after Class Members have been given notice of the Settlement and have had an opportunity to be heard.

### 3. *The Stage of the Proceedings and the Amount of the Discovery Completed*

*Third,* this case is at a stage of proceedings where counsel understand its strengths and weaknesses. This factor "captures the degree of case development that class counsel have accomplished prior to settlement," and allows the court to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp.,* 55 F.3d at 813. As noted above, the Parties have engaged in substantial discovery to date, including formal and informal exchange of documents, third-party subpoenas, and depositions. The Parties fully briefed Defendant's first and second motions to dismiss. Thus, Class Counsel had more than adequate appreciation for the strengths and weaknesses of their case. *See Viropharma,* 2016 WL 312108, at *10-11 (finding that the third *Girsh* factor was satisfied when the parties had fully briefed defendants' motion to dismiss, completed expedited discovery, and had met and conferred multiple times). Therefore, this factor weighs strongly in favor of approval of the Settlement.

### 4. *The Risks of Establishing Liability and Damages*

The *fourth* and *fifth Girsh* factors – the risks of establishing liability and the risks of establishing damages – require a court to "balance the likelihood of success and the

potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 640-41 (E.D. Pa. 2003). Here, these factors weigh in favor of preliminary approval. To begin, Section 30.42 of the *Manual for Complex Litigation (Third)* states that a Court evaluating a class action settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." Manual Complex Lit. § 30.42 (4th ed.). As previously stated, both Parties' counsel are experienced in class actions and antitrust litigation.

Plaintiff believes the no-poach provision is anti-competitive, but the recent decisions in the Jimmy John's and McDonald's cases enhance the risk of proving liability because both cases relied on the Supreme Court's *Alston* decision to hold that rule of reason analysis applies in no-poach actions brought by franchisee employees. *Conrad v. Jimmy John's Franchise, LLC,* 2021 WL 3268339, at *10; *Deslandes v. McDonald's USA, LLC*, 2021 WL 3187668, at *7; *Deslandes v. McDonald's USA*, LLC, 2022 WL 2316187, at *4-5 (granting judgment on the pleadings for McDonalds). Unlike per se or quick look analysis, rule of reason is a more complex analysis and is far less favorable to an antitrust plaintiff.

Also, proving damages at trial is unpredictable, because "damages would likely be established at trial through a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe." *Warfarin,* 212 F.R.D. at 256. In *In re Cendant*, the Court reasoned that there was no compelling reason to think that a jury confronted with competing expert opinions would favor one over the other. 264 F.3d at

239. Thus, this factor weighs in favor of preliminary approval.

### 5.  *The Risks of Maintaining the Class Action Through Trial*

*Sixth,* the risk of maintaining a class action through trial favors settlement. "Under Federal Rule of Civil Procedure 23(a), a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable." *Id.* at 262. The risks of certifying a nationwide class are discussed in Section II.B. above. Outside of the settlement arena, Jiffy Lube would also oppose certifying even the narrower class presented here. And even if the Court certified the class defined in the Settlement Agreement, proceeding to trial would inevitably carry the risk of decertification. Thus, this factor favors settlement.

### 6.  *The Ability of the Defendants to Withstand a Greater Judgment*

The *seventh Girsh* factor, whether a defendant is able to withstand a greater judgment, is neutral because Jiffy Lube is likely to be able to withstand a greater judgment. However, as further outlined below, the proposed Settlement provides Settlement Class Members with approximately 90% of their potential damages and is reasonable considering the risks of continued litigation.

### 7.  *The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation*

The *eighth* and *ninth Girsh* factors require a court to consider whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. *In re Linerboard Antitrust Litig.,* 292 F.Supp.2d at 642-43. This assessment should consider "the present value of damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, compared with the

amount of the proposed settlement. *Id.* (quoting *In re Prudential*, 148 F.3d at 322). The total settlement is 90% of the estimated Class damages, far exceeding recovery percentages found reasonable by this Court in other cases. *See, e.g.*, *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489–90 (E.D. Pa. 2003) (approving a settlement providing 15% of estimated damages).

This settlement represents a good value for all Settlement Class Members. This is guaranteed financial relief to the injured parties. Compared with the substantial risks and costs associated with ongoing litigation, the finality and certainty of settlement should be preferred. *See In re Aetna Sec. Litig.,* No. MDL 1219, 2001 WL 20928, at *11 (E.D. Pa. Jan. 4, 2001) ("settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution"). Thus, this factor weighs in favor of certification.

## V.   THE PROPOSED SETTLEMENT CLASS SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION AT THE SETTLEMENT STAGE

The U.S. Supreme Court has made clear that even when the Court determines that a settlement is fair under the strictures of Fed. R. Civ. P. 23(e), it still must consider whether a class can be preliminarily certified under Rules 23(a) and (b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997); *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 858 (1999).

//

//

### A.  Rule 23(a)'s Requirements Are Satisfied

Rule 23(a) requires the proponents of certification to establish each of the following: (1) that the members of the proposed class are so numerous that joinder of the individual claims would be impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the proposed class representatives are typical of the claims of the Class members; and (4) that the proposed class representatives will adequately represent the interests of the class. Fed. R. Civ. P. 23(a).

#### 1.  Numerosity

For a class action to be appropriate, the proposed class must be so numerous that joinder of all members is "impracticable." Fed. R. Civ. P. 23(a)(1). Although no minimum number is required to maintain a class action suit, the Third Circuit has held that classes "in excess of forty members" will generally satisfy the numerosity requirement. *Vista Healthplan*, 2015 WL 3623005, at *3. Here, the proposed settlement class encompasses approximately 1,250 individuals, satisfying numerosity. Schrag Decl. at ¶ 12.

#### 2.  Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." *In re Nat'l Football League Players Concussion Inj. Litig.,* 301 F.R.D. at 200. The commonality requirement requires that plaintiffs "share at least one question of fact or law with the grievances of the prospective class." *Warfarin,* 391 F.3d at 527-28. To satisfy Rule 23's commonality requirement, class claims must "depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011). The Third Circuit has stated that "[t]he bar is not high; we have acknowledged commonality to be present even when not all members of the plaintiff class suffered an actual injury, when class members did not have identical claims, and, most dramatically, when some members' claims were arguably not even viable. *In re Cmty. Bank of N. Virginia Mortg. Lending Pracs. Litig.*, 795 F.3d 380, 397 (3d Cir. 2015).

Here, there are common questions that can be resolved using common proof and uniform legal analysis. They include (1) whether Jiffy Lube engaged in unlawful contracts, combinations, and/or conspiracies in restraint of trade and commerce and in violation of the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq.*; (2) whether such agreements had an antitrust impact in suppressing wages below competitive levels; (3) whether Plaintiff and Class Members are entitled to damages, restitution, disgorgement, equitable relief, and/or other relief; and (4) the amount and nature of such relief to be rewarded to Plaintiff and the class.

These common questions will yield common answers and readily satisfy the commonality requirement.

### 3. *Typicality*

Rule 23(a)(3) requires that the class representatives' claims be "typical of the claims . . . of the class," and that "the typicality inquiry is intended to assess . . . whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey,* 43 F.3d 48, 57-58 (3d Cir. 1994). Typicality is satisfied if "a single overarching common question . . . cuts

across every claim of every Settlement Class Member." *Stevens v. SEI Investments Co.,* 2020 WL 996418, at *8 (finding typicality where all settlement class members' claims asked whether defendant's fee practice related to in-network services violated ERISA).

Here, Plaintiff's and all Settlement Class Members' legal claims arise out of the same alleged conduct. Namely, that Plaintiff and Settlement Class Members all worked at Jiffy Lube franchise stores during the time the No-Poach Provision was in effect. In short, Plaintiff's and Settlement Class Members' claims arise out of the same course of conduct, the same injury, and they seek the same relief. Thus, typicality is satisfied.

### 4. *Adequacy of Representation*

Under Rule 23(a)(4), a class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to meet this requirement, the Court must find that "(1) plaintiff's interests do not conflict with those of the class; and (2) the proposed class counsel are capable of representing the class" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 (3d Cir. 2001) (internal quotations omitted). Both of these requirements are met.

First, Plaintiff's counsel are experienced class action lawyers whose combined experience in class action antitrust cases, and diligence in this litigation, will more than adequately protect the interests of the class. *See* Schrag Decl. at ¶¶ 2, 8, Ex. 2.

Second, there is no conflict or antagonism whatsoever between the Plaintiff and the Settlement Class Members. All share a united interest in putting an end to Defendant's allegedly illegal No-Poach agreements, and all seek redress for the harm they suffered because of those practices.

### B.  Rule 23(b)(3) Is Satisfied

#### 1.  *Common Issues Predominate*

As the Supreme Court has held, while Rule 23(b)(3) requires a showing that *questions* common to the class predominate, it does not require proof that those questions will be answered, on the merits, *in favor of* the class. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013). The Court is "more inclined to find the predominance test met in the settlement context." *Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 304 n. 29 (3d Cir. 2011).

Plaintiff's claims of Defendant's violation of the Sherman Act rely upon a common legal theory related to a singular body of facts – that Defendant utilized the No-Poach Provision in franchise agreements to artificially and anticompetitively suppress wages for the benefit of franchise and store owners, and then took steps to conceal their conspiracy. Thus, a common course of conduct affected each plaintiff in the same way. *See Amchem,* 521 U.S. at 625 (noting that "predominance is a test readily met in certain cases alleging consumer fraud or violations of antitrust laws."). Furthermore, as discussed above in connection with the commonality requirement under Rule 23(a)(2), Plaintiff has identified at least five common issues that arise from Defendant's common course of conduct and are suitable for class adjudication.

Additionally, courts in this district have recognized that "[a]s a general rule, liability for anticompetitive conduct focuses on the defendants' actions, not the conduct of individual class members." *Vista Healthplan,* 2020 WL 1922902, at *11. As discussed above, multiple common questions lie at the heart of all Settlement Class Members' claims,

26

including whether Defendant engaged in a contract, combination, and/or conspiracy in restraint of trade. Because the question of liability is common to the class, predominance is satisfied here.

### 2.   A Class Action Is the Superior Method for Resolving These Claims

Rule 23(b)(3) instructs that the matters pertinent to this inquiry include: (a) class members' interests in individually controlling the prosecution of separate actions; (b) whether other litigation exists concerning this controversy; (c) the desirability of concentrating the litigation in this forum; and (d) any difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). These factors favor certification in this case.

A class action is the superior method of resolving this case. In *Whiteley v. Zynerba Pharms., Inc.,* No. 19-4959, 2021 WL 4206696, at *9 (E.D. Pa Sept. 16, 2021), the court found superiority where "[a]ll of the Settlement Class Members' claims are based upon the same basic operative facts and legal standards," and held that "[i]t would be a far better use of judicial resources to adjudicate all these identical issues once, on a common basis." Such reasoning holds true here. Requiring each Settlement Class Member to come forward with individual – and identical – claims would deplete the judiciary's resources, create inconsistent results, establish incompatible standards of conduct for the Defendant, and lead to repetitious, complex trials. Thus, a single litigation is superior to a series of other litigations or to individuals potentially foregoing their claims and satisfies Rule 23(b)(3).

//

//

## VI.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

Federal Rule of Civil Procedure 23(e)(1) provides that, in the event of a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Nat'l Football League Players Concussion Inj. Litig.,* 821 F.3d at 435.

Here, the Parties have negotiated the form of the notices to be disseminated to the Settlement Class. The proposed Notice (Schrag Decl. Ex. 1 at Ex. B) provides detailed information about the Settlement, including: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims and issues; (iv) that a class member may enter an appearance through counsel if desired; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2). The Notice also includes: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to request attorney's fees, reimbursement of costs and expenses, and an incentive award for the Plaintiff; and (3) detailed information about the Released Claims. In short, the notice contains sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.

The Court must also direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts. Fed. R. Civ. P. 23(c)(2)(B). Here, individual notice will be sent by mail to each Settlement Class Member, all of whom can be identified from Jiffy Lube's internal documentation. The Settlement Administrator will perform a National Change of Address search and conduct advanced address updating using a variety of tools such as Lexis Nexis or other services to obtain a current address. Peak Decl. at ¶ 13. For Settlement Class Members whose notices are returned undeliverable, the Settlement Administrator will update addresses and promptly resend notices. Notice will also be available via a case-dedicated website and will allow interested Settlement Class Members to submit information online.

The Parties have agreed upon, and propose that the Court approve, Gilardi & Co. LLC to be the Settlement Administrator, to implement the Class Notice, and to administer the Settlement, subject to review by counsel and the Court. As described in Section III.D. and in the Peak Declaration, Gilardi has the required skills and experience to effectuate Class Notice.

Accordingly, the proposed notice plan is reasonable and adequate, in accord with due process and Rule 23, and should be approved.

## VII.    PROPOSED SCHEDULE OF EVENTS

The proposed order granting preliminary approval proposes the following schedule of events leading up to the Final Approval Hearing:

29

| Notice Date | _____ [within 75 days after entry of preliminary approval order] |
|---|---|
| Deadline to contest earnings estimate | 45 days after the Notice Date |
| Deadline to file Notice of Objection | 45 days after the Notice Date |
| Deadline to request Exclusion | 45 days after the Notice Date |
| Gilardi to provide class counsel list of timely Requests for Exclusion | 5 business days after the Opt-Out Deadline |
| Plaintiffs to file motion for final approval and fees | 50 days after entry of preliminary approval order |
| Deadline to file affidavit attesting notice was disseminated as ordered | 115 days after entry of preliminary approval order |
| Final Approval Hearing | 125 days after entry of preliminary approval order |

## VIII.  CONCLUSION

For these reasons, Plaintiff respectfully asks the Court to enter an Order (1) granting preliminary approval of the Settlement; (2) certifying the Class for the purpose of the Settlement; (3) appointing Gibbs Law Group as Settlement Class Counsel; (4) appointing Plaintiff Victor Fuentes as representative of the Settlement Class; (5) holding that the Notice and Notice Plan satisfy due process and provide the best notice practicable under the circumstances; (6) Appointing Gilardi as the Settlement Administrator; and (7) scheduling the Final Approval Hearing and related dates as proposed.

Dated: July 22, 2022                          Respectfully Submitted,


/s/ Michael L. Schrag                         Catherine K. Smith #353723
Michael L. Schrag                             GUSTAFSON GLUEK PLLC
(admitted pro hac vice)                       Canadian Pacific Plaza
mls@classlawgroup.com                         120 South 6th Street, Suite 2600
Joshua J. Bloomfield                          Minneapolis, MN 55402
(admitted pro hac vice)                       Telephone: (612) 333-8844
jjb@classlawgroup.com                         csmith@gustafsongluek.com
George W. Sampson

(admitted pro hac vice)
gws@classlawgroup.com
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

Richard M. Paul III
(admitted pro hac vice)
Rick@PaulLLP.com
**PAUL LLP**
601 Walnut, Suite 300
Kansas City, Missouri 64106
Telephone: (816) 984-8100
Facsimile: (816) 984-8101

Dennis Stewart
dstewart@gustafsongluek.com
**GUSTAFSON GLUEK PLLC**
600 B Street, 17th Floor
San Diego, CA 92101
Telephone: (619) 595-3299

John A. Yanchunis
jyanchunis@forthepeople.com
Florida Bar No. 324681
Marcio W. Valladares
mvalladares@forthepeople.com
Florida Bar No. 0986917
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 North Franklin Street,
Seventh Floor
Tampa, Florida 33602
Telephone: (813) 223-5505

Kevin Clancy Boylan
cboylan@forthepeople.com
Pennsylvania Bar No. 314117
**MORGAN & MORGAN**
1600 John F. Kennedy Blvd, Suite 900
Philadelphia, PA 19102
Telephone: (215) 446-9795

*Attorneys for Plaintiff and Proposed Class*

31

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

*/s/ Michael L. Schrag*