## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Victor Fuentes, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 18-5174 |
| v. | : | |
| | : | |
| Jiffy Lube International, Inc., | : | |
| Defendant. | : | |

**December 13, 2023**                                                          **Anita B. Brody, J.**

### MEMORANDUM

On November 29, 2018, Victor Fuentes filed suit against Jiffy Lube International, Inc. ("Jiffy Lube"). He sought to represent a nationwide class of former Jiffy Lube franchisee employees in their antitrust claims. On July 22, 2022, Fuentes moved for approval of a preliminary settlement agreement with Jiffy Lube that only encompassed claims from the greater Philadelphia area. On September 2, 2022, former Jiffy Lube franchisee employee Oscar Jimenez moved to intervene and pursue a nationwide and California-specific class. On April 19, 2023, Jiffy Lube moved to compel Jimenez to arbitration based on an agreement Jimenez had signed with his former employer. On September 14, 2023, I dismissed Jimenez's complaint and terminated him from the case. On September 15, 2023, I preliminarily approved the settlement between Fuentes and Jiffy Lube.

On September 21, 2023, Nathan Hernandez, another former Jiffy Lube franchisee employee represented by the same counsel as Jimenez, sought to intervene to pursue a nationwide class action. For the following reasons, I will deny Hernandez's motion to intervene as untimely.

I.   **BACKGROUND**

On July 22, 2022, Plaintiff Victor Fuentes and Defendant Jiffy Lube reached a proposed settlement of class claims. Pl.'s Mot. Approval of Settlement, ECF No. 90. Fuentes had originally filed a complaint seeking to represent a nationwide class of former Jiffy Lube franchisee employees. Pl.'s Compl., ECF No. 1 ¶¶ 8, 74. The parties engaged in discovery and negotiations for nearly four years. At the conclusion of these negotiations, the settlement Fuentes and Jiffy Lube reached encompassed only those claims by former Jiffy Lube franchisee employees who had worked in the greater Philadelphia metropolitan area. Pl.'s Mot. Approval of Settlement, ECF No. 90.

Six weeks after Fuentes proposed his settlement with Jiffy Lube, Oscar Jimenez moved to intervene. Jimenez Mot. to Intervene, ECF No. 94. Jimenez is a former employee of a California-based Jiffy Lube franchisee. Jimenez Compl., ECF No. 94-2 ¶ 106. Concerned that the new settlement would preclude recovery for those who worked outside of the greater Philadelphia area, Jimenez sought to litigate a nationwide class action with a potential California subclass. Jimenez Mot. to Intervene at 2. However, he did not object to the existing settlement agreement. *Id.* In March 2023, I granted Jimenez's motion to intervene given his interest in the case as a former putative class member. Mem. and Order, ECF Nos. 116, 117.

On April 19, 2023, Jiffy Lube moved to compel Jimenez to arbitrate his claims. Def.'s Mot. to Compel Arbitration, ECF No. 131. On June 9, 2023, Jimenez moved for leave to file an amended complaint to add a co-plaintiff, Nathan Hernandez. Jimenez Mot. for Leave to File Amended Compl., ECF No. 144, at 1. Hernandez, another former employee of a California Jiffy Lube franchisee who was excluded from Fuentes' settlement agreement, did not move to intervene. However, in a footnote of Jimenez's reply brief regarding his motion for leave to amend his

complaint, Jimenez asked the Court to construe this motion as a motion to intervene by Hernandez. Jimenez Reply to Def. Opp. to Jimenez Mot. for Leave to File Amended Compl., ECF No. 148, at 4 n.1.

On September 14, 2023, I granted Jiffy Lube's motion to compel Jimenez to arbitrate his claims. Order, ECF No. 154, at 1. All Jimenez's other outstanding motions, including his motion for leave to amend his complaint, were resolved as moot because he was no longer a party to the case. *Id.* His class action complaint was necessarily dismissed upon his termination from the case.[1]

On September 15, 2023, I granted Fuentes' motion for preliminary approval of his settlement with Jiffy Lube. Order, ECF No. 155.

On September 21, 2023, Hernandez moved to intervene. Hernandez Mot. to Intervene, ECF No. 157. Hernandez is a former employee of a Jiffy Lube franchisee in Chino Hills, California. *Id.* at 2. Hernandez attached a complaint to his motion to intervene alleging that Jiffy Lube violated the Sherman Antitrust Act. Ex. A, ECF No. 157-1. Because Hernandez's motion is not timely, I will deny his motion to intervene.

## II.   LEGAL STANDARD

Hernandez moves for both mandatory and discretionary intervention pursuant to Federal Rules of Civil Procedure 24(a) and (b). If a nonparty is granted intervention under either of these subsections, they become a party to the suit. *Wayne Land and Mineral Group LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 521 n.6 (3d Cir. 2018) ("[C]ourts have held that '[w]hen a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party.'") (quoting *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C.

---

[1] I declined to consider Jimenez's footnote request to construe his motion for leave to amend the complaint as a motion for Hernandez to intervene. Order, ECF No. 154, at 1 n.1. Jimenez raised this request in a footnote of a reply brief, and the parties did not have the opportunity to brief this issue.

Cir. 1985).

Subsection (a)(2) sets forth the requirements for mandatory intervention, or intervention as of right:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). A proposed intervenor who seeks to intervene under Rule 24(a) must satisfy four requirements: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005).

Permissive intervention, or intervention under Rule 24(b), allows a court to permit intervention where a nonparty who "has a claim or defense that shares with the main action a common question of law or fact" files a timely motion. Fed. R. Civ. P. 24(b)(1)(B). In evaluating such motions, a court must also consider whether intervention will "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

I previously granted a motion to intervene filed by Oscar Jimenez. Order, ECF No. 117. Jimenez, like Hernandez, was a putative class member as defined by Fuentes' first complaint but not as defined in the proposed settlement agreement. There is no material distinction between Jimenez and Hernandez in terms of their interests in the litigation, the impairment of that interest, or the adequacy of their representation. I see no reason to depart from my findings that Jimenez met all the requirements for mandatory and permissive intervention.

Hernandez now seeks intervention at a different stage in the litigation. Jimenez brought a

4

nearly identical complaint for a nationwide class action, which was then dismissed upon his termination from the case. Fuentes' class has been preliminarily certified. While Hernandez otherwise meets the criteria for intervention, the question remains whether his motion to intervene is timely.

### A. Timely Motion

Both mandatory and permissive intervention require a timely motion. Fed. R. Civ. P. 24(a)–(b). This inquiry is the same for both types of intervention. *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (treating the timeliness inquiry the same for both types of intervention motions); *but see Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 949 (3d Cir. 2012) ("There is a general reluctance to dispose of a motion to intervene as of right on untimeliness grounds[.]"). Timeliness, in both cases, is determined by the "totality of the circumstances." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016). Three factors relevant to this analysis include: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *In re Cmty. Bank of N. Va.*, 418 F.3d at 314. Courts should measure a delay in filing "from the time the proposed intervenor knows or should have known of the alleged risks to his or her rights or the purported representative's shortcomings." *Benjamin*, 701 F.3d at 950 (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)).

### B. Presumption of Timeliness

Motions to intervene by absent class members are presumptively timely. *Wallach*, 837 F.3d at 373; *In re Cmty. Bank of N. Va.*, 418 F.3d at 314. In *Wallach*, two putative class members were permitted to intervene to take the place of a named plaintiff whose standing was called into question. 837 F.3d at 371. The Third Circuit in *In re Community Bank of Northern Virginia* grappled with a similar issue and applied this presumption to putative class members' motions to

5

intervene during the opt-out period. 418 F.3d at 314.

This presumption does not apply to someone who was included in the initial complaint's class definition but is no longer a putative class member. Unnamed putative class members receive the benefit of this presumption much as they can receive other benefits, like the tolling of a limitations period. *Smith v. Bayer Corp*, 564 U.S. 299, 313 n.10 (2011). However, once they are excluded from a class definition, these benefits end. *Aly v. Valeant Pharmaceuticals Int'l Inc.*, 1 F.4th 168, 175 (3d Cir. 2021) (citing *American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 553 (1974)) (confirming that the limitations period stops tolling when a putative class member is no longer part of a proposed class).

Once excluded from the original class definition, potential plaintiffs are left with two options to move forward with their cases: to file separate suits or to timely intervene in the pending litigation. *In re Fine Paper Antitrust Litig.*, 695 F.2d at 499. The evaluation of such a motion to intervene "does not require a court to take into account the language of the original complaint." *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 201 (2d Cir. 2000); *see also Townes v. Trans Union, LLC*, No. 4-cv-1488, 2007 WL 2457484 at *2 n.5, *3 n.6 (D. Del. Aug. 30, 2007) (questioning whether intervention by those excluded from a class definition would be presumptively timely). As held by the Second Circuit, "the broad language of a complaint in a class action lawsuit does not vest in putative class members a right to be part of the class ultimately certified by the District Court." *In re Holocaust Victim Assets Litig.*, 225 F.3d at 202. It follows that the presumption of timeliness dissipates after a putative class member is excluded from the class. Because Hernandez was excluded from Fuentes' class, the presumption of timeliness does not apply here.

## III.   DISCUSSION

Hernandez moves to intervene in order to resuscitate former party Oscar Jimenez's nationwide class action complaint. To analyze the timeliness of his motion, I begin by measuring his delay in filing. Then, I consider the three main factors for assessing timeliness: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *In re Cmty. Bank of N. Va.*, 418 F.3d at 314.

### A.  Hernandez's Delay

The delay in filing a motion must be measured from when Hernandez knew of the risks to his rights or a purported representative's shortcomings. *See Benjamin*, 701 F.3d at 950. In this case, the risk to Hernandez's rights was triggered on July 22, 2022, when Fuentes filed his Motion for Approval of Settlement and Second Amended Complaint, excluding Hernandez (and Jimenez) from the putative class (ECF Nos. 90, 91). Beginning on July 22, 2022, Hernandez was no longer a putative class member, and his rights were unprotected. Jimenez then moved to intervene and was added to the suit. When Jimenez moved to intervene on September 2, 2022, Hernandez, too, should have been aware of the change in the class definition.[2]

Despite his urging, Hernandez's delay is not measured from September 14, 2023, when Jimenez was compelled to arbitration (ECF No. 154). Hernandez Mot. to Intervene, ECF No. 157, at 6; *see China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1810–11 (2018) ("The plaintiff who seeks to preserve the ability to lead the class . . . has every reason to file a class action early, and little reason to wait in the wings, giving another plaintiff first shot at representation").[3] Hernandez

---

[2] Because Jimenez and Hernandez shared the same counsel since at least June 9, 2023, I presume Hernandez's awareness of the progress of the case. *See* Jimenez Mot. for Leave to File Amended Compl., ECF No. 144, at 1 (listing Hernandez as potential co-plaintiff).

[3] Hernandez's delay is not excused by Jimenez's attempt to add him as a co-plaintiff. *See* Jimenez Mot. for Leave to File Amended Compl., ECF No. 144 (seeking to amend his complaint to add Hernandez). Jimenez's reply brief to Jiffy Lube's opposition to his motion included a footnote requesting that the motion for leave to amend be construed as a motion to intervene "[i]f the Court determines that adjudicating the motion for leave to amend is inappropriate

"wait[ed] in the wings" for over a year while his rights were in jeopardy. *Id*. Hernandez was

obligated to act without delay if he wished to litigate his claims as a class representative. I therefore

consider his delay in moving to intervene to be approximately one year and two months.

### B. The Stage of the Proceeding

The mere passage of time between Jimenez and Hernandez's motions to intervene is not,

without more, dispositive of their timeliness. Instead, the inquiry is: "what proceedings of

substance on the merits have occurred?" *Mountain Top Condominium Ass'n v. Dave Stabbert*

*Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).

Where a case is in its early stages, or where little to no discovery has been conducted,

motions to intervene may be timely despite months-long delays.[4] Courts apply the timeliness

requirement more strictly when motions to intervene come closer to settlement or trial. In *In re*

*Fine Paper Antitrust Litigation*, those excluded from a class did not seek intervention until nearly

ten months after they were excluded—and almost six months after entry of final judgment.

695 F.2d at 499. The Third Circuit affirmed the district court's denial of their intervention, citing

the "late stage of these proceedings." *Id.* at 500. Similarly, in *Brennan v. Community Bank, N.A.*,

a class member moved to intervene in a class action litigation prior to the end of the opt-out period

but after preliminary approval of a settlement. 314 F.R.D. 541, 543–44 (M.D. Pa. 2016). The

district court refused to allow intervention because the proposed intervenor knew about the

---

before the motion to compel arbitration is resolved." Jimenez Reply to Def. Opp. to Jimenez Mot. for Leave to File Amended Compl., ECF No. 148, at 4 n.1. Jimenez's counsel correctly anticipated that the Court must rule on a motion to compel a party to arbitration prior to addressing that party's other motions. *See Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017) (citing *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)). However, Hernandez did not move to intervene until months later.

[4] *See, e.g., UPS Worldwide Forwarding, Inc. v. United States Postal Serv.*, 853 F. Supp. 800, 807 (D. Del. 1994), *rev'd on other grounds*, 66 F.3d 621 (3d Cir. 1995) (finding that a less than three-month delay in moving to intervene was timely when filed before discovery had commenced); *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 568 (D. Del. 1981) (stating that motion to intervene was timely even after "eight month delay between the completion of the pleadings and [the] motion to intervene ... [because] discovery has not been completed [and] there have been no significant decisions on the merits").

litigation for over a year and did not justify why they delayed filing until after preliminary approval of the settlement. *Id.* at 544.

While this case is not concluded, it is in a late stage of proceedings. There have been five years of substantial litigation on the merits in this case, and preliminary class certification has been granted. Like the proposed intervenor in *In re Fine Paper Antitrust Litigation*, Hernandez was excluded from a broad class complaint and knew for over a year that his rights were at risk. Like the would-be intervenor in *Brennan*, Hernandez seeks intervention after a class action settlement agreement was preliminarily approved. The stage of the proceedings weighs against allowing Hernandez to intervene.

Moreover, the stage of the proceeding is particularly important in the class action context. All potential lead plaintiffs in a class action should pursue all their claims early in the litigation to ensure that the district court can assess the most efficient way to resolve the suit. Early filing affords district courts "time to consider competing claims for class representation will advance the likelihood that lead plaintiff or class counsel deficiencies will be discovered and acted upon early in the litigation." *China Agritech*, 138 S. Ct. at 1809 n.5.[5] Late-stage intervention in a class action is disfavored because it undermines this goal of efficiency. *See id.* at 1806 ("'[E]fficiency and economy' . . . do not support maintenance of untimely successive class actions; any additional *class* filings should be made early on, soon after the commencement of the first action seeking class certification.") (quoting *American Pipe*, 414 U.S. at 553). In *China Agritech*, the Supreme Court explained the reasoning behind this approach:

> [E]fficiency favors early assertion of competing class representative claims. If class treatment is appropriate, and all would-be representatives have come forward, the

[5] While *China Agritech* addressed tolling of statutes of limitations for class claims, and not motions to intervene, its holding and dicta apply to this situation. Here, Hernandez seeks intervention to pursue a new class claim that could only be viable if its statute of limitations were tolled by Fuentes' case. *China Agritech* addresses the policy concerns and legal frameworks surrounding later-filed class actions like Hernandez's.

> district court can select the best plaintiff with knowledge of the full array of potential class representatives and class counsel. And if the class mechanism is not a viable option for the claims, the decision denying certification will be made at the outset of the case, litigated once for all would-be class representatives.

*Id.* at 1807; *see also Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 710 (3d Cir. 2019) ("[D]istrict courts can deal with multiple filings[, and] additional filings may inform whether to certify a class."). After this initial filing period, "there is little reason to allow plaintiffs who passed up those opportunities to enter the fray several years after class proceedings first commenced." *China Agritech*, 138 S. Ct. at 1808.

While Hernandez ideally would have filed suit or intervened in 2018, early in Fuentes' litigation, he may have been unaware of the suit or reliant on Fuentes' maintenance of the original nationwide class definition. It would have been appropriate then for Hernandez to intervene immediately after Fuentes proposed his settlement agreement for the smaller geographic area. This is what Jimenez did. Hernandez, however, was also represented by Jimenez's counsel, but he did not act.

Hernandez is not seeking to join Fuentes' suit so much as he is aiming to resuscitate Jimenez's nationwide class action complaint. Hernandez does not object to the existing settlement agreement between Fuentes and Jiffy Lube. Hernandez Reply to Def. Opp. to Hernandez Mot. to Intervene, ECF No. 165, at 9. When Jimenez intervened, Fuentes' class had not yet been preliminarily certified, so the class membership was still in flux. Hernandez claims that he "is simply pursuing the same claims on the same timeline as Mr. Jimenez would have done had he not been compelled to arbitration." Hernandez Mot. to Intervene, ECF No. 157, at 7. This is not so. Now, Fuentes' case is nearly concluded, so Hernandez is effectively trying to file a new case in the docket of a much older one. Had he filed earlier, this Court could have determined whether he, Jimenez, or Fuentes was a viable lead plaintiff and managed the case accordingly.

Hernandez's more than year-long delay in a five-year-old case places him outside the usual time for granting intervention. In light of *China Agritech*, Hernandez's attempt to intervene in a class action near the end of litigation is particularly disfavored.

### C.  Prejudice Caused by Hernandez's Delay

Hernandez's intervention at this stage of litigation would further delay a long-awaited settlement. Hernandez argues that his intervention would not significantly prejudice the existing parties to the suit. Hernandez Reply to Def. Opp. to Hernandez Mot. to Intervene, ECF No. 165, at 5, 9. While Fuentes' settlement might eventually proceed even if Hernandez intervened, his intervention would delay final class certification and finalization of the settlement.[6] Without a limiting principle, other prospective lead plaintiffs could intervene in Hernandez's suit and further delay proceedings if the class definition were to change once more.

If would-be lead plaintiffs like Hernandez do not move to intervene at the earliest possible stage of litigation, class action litigation can extend indefinitely. In *China Agritech*, the Supreme Court considered the effects that unlimited tolling of a statute of limitations could have, fearing that "as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." 138 S. Ct. at 1803; *see also Blake*, 927 F.3d at 710 (in the context of statutes of limitations, stating concerns that endless tolling for plaintiffs who "slept on their rights" would undermine Rule 23's instruction to resolve class certification early on).

Intervention to pursue a new complaint *after* preliminary class certification necessarily prejudices the existing parties in the case. While parties have significant flexibility to negotiate and change positions during the early stages of a case, this is no longer true after a proposed

---

[6] The Court has already suspended the deadlines in the order granting preliminary class certification to allow time for the parties to brief this motion to intervene and for the Court to issue an opinion. Order, ECF No. 168. Class members' awards under Fuentes' proposed settlements are likewise delayed until class certification can be finalized.

settlement agreement and preliminary class certification. Intervention to pursue a new class definition at this late stage unsettles parties' expectations. Jiffy Lube would be hard-pressed to negotiate a viable settlement with both Fuentes, and then Hernandez, while the specter of additional intervenors remains until final judgment is entered.

### D.  Hernandez's Reasons for Delay

Hernandez claims that he relied on Jimenez's motion for leave to amend his complaint to include Hernandez, and that this excuses his delay. Hernandez Reply to Def. Opp. to Hernandez Mot. to Intervene, ECF No. 165, at 4–5.  Hernandez's reliance was misplaced. He was required to file any class claims early in the litigation, but he instead waited to see if Jimenez could adequately represent his interests.

The Supreme Court rejected this "wait and see" approach in *China Agritech*, even where a lead plaintiff's deficiencies, like Jimenez's arbitration agreement, are not immediately apparent. Justice Sotomayor argued in her concurrence that different standards should exist for class certification when it fails due to a legal defect in the suitability of the claims for class treatment, as opposed to class certification that fails due to the deficiencies of a lead plaintiff. *China Agritech*, 138 S. Ct. at 1814 (Sotomayor, J., concurring). The Court explicitly rejected such a distinction, finding no reason to give separate effect depending on the reason that a class failed to proceed. *Id.* at 1809 n.5. The First Circuit has since echoed this decision, confirming that tolling stops "no matter how the motion [to certify a class] is ultimately resolved[,]" and that to hold otherwise "would be to allow a chain of withdrawn class-action suits to extend the limitations period forever." *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 16–17 (1st Cir. 2019).

Hernandez claims that the footnote request in Jimenez's reply brief should be considered sufficient to safeguard his rights, citing *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1182

(3d Cir. 1994). *See* Hernandez Reply to Def. Opp. to Hernandez Mot. to Intervene, ECF No. 165, at 5 ("[W]here a party takes reasonable steps to protect its interest, its application should not fail on timeliness grounds.") (quoting *Alcan Aluminum*, 25 F.3d 1174, 1182). However, his citation of *Alcan Aluminum* is inapposite to the current situation. The reason for Hernandez's delay—awaiting the result of Jimenez's motions—is not relevant to the analysis of his motion.[7] Hernandez should not have relied on a footnote in Jimenez's reply brief to safeguard his rights.[8] Hernandez had an obligation as a potential lead plaintiff to file his class claims as soon as possible.

Where a potential intervenor appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention. *See, e.g., In re Fine Paper Antitrust Litig.*, 695 F.2d at 501 (affirming denial of intervention because applicants "knew or should have known long before settlement that their interest was not protected" and "presented no reason for their delay"). A potential lead plaintiff seeking intervention cannot mitigate their period of delay by taking steps, short of intervention, to preserve their interests. *See, e.g., Brennan*, 314 F.R.D. at 545 (denying delayed motions to intervene despite the proposed intervenor's prior objection to a settlement because "[o]bjections to a settlement and a motion to intervene are *distinct* legal filings."). The footnote in Jimenez's reply brief was insufficient to show that Hernandez was diligent in safeguarding his rights. Hernandez's reason for delay is inadequate and does not excuse the late filing of his motion to intervene.

---

[7] An exception might be made in the situation presented in *Alcan Aluminum* itself. In that case, the opposing party gave false assurances and induced the potential intervenors to refrain from intervention. 25 F.3d at 1182. This is not the case here.

[8] Jimenez's request would not have been reached, even if his motion were adjudicated on the merits, because it was raised for the first time in the footnote of a reply brief. *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."); *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 779 (D.N.J. 2013) ("[I]t is well established that new arguments cannot be raised for the first time in reply briefs."); *see also Garza v. Citigroup, Inc.*, 881 F.3d 277, 284 (3d Cir. 2018) ("Raising an issue in a reply brief is too late[.]").

**IV.    CONCLUSION**

Based on the totality of the circumstances, Hernandez's motion to intervene in these proceedings is untimely. Intervention at this late stage has the potential to unsettle and delay a long-awaited settlement, and it would inject uncertainty into these proceedings. The experience of the last several years of Fuentes' litigation underscores this concern. If Hernandez did intervene, it is plausible that his proposed nationwide class would eventually shrink (as Fuentes' did) over a multi-year negotiation to encompass only certain claimants: perhaps only California residents. In such a case, a former employee who was excluded from the putative class once again could intervene under the Hernandez's theory and prolong litigation indefinitely. Allowing repetitive intervention at such a late stage in litigation would contravene the Supreme Court's urging in *China Agritech* that those who wish to represent a class should file their own suits early and refuse to sit on their rights. 138 S. Ct. at 1810–11.

For the reasons discussed above, I will deny Hernandez's Motion to Intervene (ECF No. 157). An appropriate order follows.


s/ANITA B. BRODY, J
ANITA B. BRODY, J.

14